# EXHIBIT D

Electronically Filed - COLE CIRCUIT - September 29, 2025 - 04:33 PM

## IN THE CIRCUIT COURT OF COLE COUNTY, MISSOURI

PEOPLE NOT POLITICIANS *et al.*    )
                                   )
                                   )
            Plaintiffs,            )
                                   )
v.                                 )
                                   )     Case No. 25AC-CC07128
MISSOURI SECRETARY OF STATE        )
DENNY HOSKINS,                     )
                                   )
            Defendant.             )

### FIRST AMENDED PETITION FOR DECLARATORY JUDGMENT AND INJUNCTIVE RELIEF

For their First Amended Petition, Plaintiffs People Not Politicians and Richard von Glahn allege and state as follows:

### PARTIES

#### Plaintiff People Not Politicians

1.     Plaintiff People Not Politicians is a campaign committee organized under the laws of the State of Missouri and subject to the regulation of the Missouri Ethics Commission.

2.     People Not Politicians is the committee supporting the campaign for the referendum petitions submitted by Plaintiff von Glahn.

#### Plaintiff Richard von Glahn

3.     Plaintiff Richard von Glahn is a Missouri citizen, resident of St. Louis County, a taxpayer, and qualified voter in the State of Missouri.

1

Electronically Filed - COLE CIRCUIT - September 29, 2025 - 04:33 PM

4.    Plaintiff von Glahn is the proponent of the referendum petitions that are the subject of this action.

5.    Attached as **Exhibit A** are true and correct copies of the referendum petitions submitted by Plaintiff von Glahn.

6.    Plaintiffs seek review of the Secretary of State's decision rejecting as to form the referendum sample sheets. § 536.150 RSMo.

7.    No other law or process allows a hearing or other review of the Secretary's decision.

8.    Plaintiffs also seek a declaration of their rights, status, or other legal relations. § 527.010 RSMo.

9.    Plaintiffs also request the court award costs which are equitable and just. § 527.100 RSMo.

Secretary of State Denny Hoskins

10.    Defendant Denny Hoskins is the Missouri Secretary of State.

11.    When the sample sheet for a referendum petition is submitted to him, Hoskins must "review the petition for sufficiency as to form and approve or reject the form of the petition, stating the reasons for rejection, if any." §116.332.1, RSMo.

12.    Within 15 days of submission, Hoskins must "make a final decision as to the approval or rejection of the form of the petition" and "send written notice to the person who submitted the petition sheet" of his decision. §116.332.4, RSMo.

13.    The Secretary of State is also required to "make a determination on the sufficiency of the petition" and "issue a certificate setting forth that the petition contains a

Electronically Filed - COLE CIRCUIT - September 29, 2025 - 04:33 PM

sufficient number of valid signatures to comply with the Missouri Constitution and with [chapter 116]." §116.150, RSMo.

## STATEMENT OF FACTS

### Referendum Right

14.    Missourians reserved to themselves the "power to approve or reject by referendum *any act of the general assembly*[.]" Mo. Const. art. III, § 49 (emphasis added).

15.    To place a referendum petition before voters, a proponent must gather signatures of "five percent of the legal voters in each of two-thirds of the congressional districts in the state[.]" Mo. Const. art. III, § 52(a).

16.    For an election taking place in 2026, a proponent must gather 106,384 signatures across six congressional districts.[1]

17.    The Constitution guarantees *at least* ninety days for a referendum proponent to gather signatures.

18.    Signed referendum petitions must be submitted **"**not more than ninety days after the final adjournment of the session of the general assembly which passed the bill on which the referendum is demanded." *Id.*

---

[1] https://www.sos.mo.gov/CMSImages/Elections/Petitions/MakeYourVoiceHeard_02.07.2025.pdf

Electronically Filed - COLE CIRCUIT - September 29, 2025 - 04:33 PM

19. Prior to gathering signatures, statute requires a referendum proponent to submit a sample of the petition form to the Secretary of State to review and approve or reject as to form. § 116.332, RSMo.

20. The statute gives the Secretary fifteen days to approve or reject a referendum sample sheet as to form. §116.332.4, RSMo.

21. Section 116.332 does not prohibit a proponent from circulating the petition while awaiting the Secretary's decision, and contains no provision addressing the validity of signatures gathered prior to such decision.

<u>House Bill 1</u>

22. On August 29, 2025, Governor Mike Kehoe issued a proclamation to convene the General Assembly for a special session to pass legislation designating new congressional districts.

23. Governor Kehoe prepared and provided to the General Assembly the new congressional districts and accompanying map.

24. The General Assembly convened on September 3, 2025 for the special session.

25. On September 12, 2025, the General Assembly truly agreed and finally passed House Bill 1 titled: "An Act To repeal sections 128.345, and 128.348, RSMo, and to enact in lieu thereof twelve new sections relating to the composition of congressional districts."

26. House Bill 1 is an act of the general assembly.

27. Attached as **Exhibit B** is a true and correct copy of House Bill 1.

4

Electronically Filed - COLE CIRCUIT - September 29, 2025 - 04:33 PM

28.    On September 12, 2025, the General Assembly adjourned the second extraordinary session of the first regular session of the 103rd General Assembly.

29.    Despite the Governor serving as the *de facto* sponsor of the legislation, the Governor spent two weeks reviewing House Bill 1

30.    On September 25, 2025, the Governor publicly announced his intention to sign House Bill 1.[2]

31.    On September 28, 2025, the Governor signed House Bill 1.

<u>Plaintiffs' Referendum Petition</u>

32.    On September 12, 2025, Plaintiff Richard von Glahn submitted for Secretary Hoskins' review, referendum petition sample sheets asking to refer House Bill 1 to voters.

33.    Plaintiff von Glahn's submission occurred after both the House and Senate had voted for the same version of House Bill 1, making it a truly agreed and finally passed act of the General Assembly.

34.    After von Glahn submitted his sample sheets, Hoskins sent a letter to Plaintiff von Glahn stating "the petitions today cannot be *accepted for processing*." (emphasis added).

35.    Attached as **Exhibit C** is a true and correct copy of the September 12, 2025 letter the Secretary of State sent to Plaintiff von Glahn.

---

[2] https://governor.mo.gov/press-releases/archive/governor-kehoe-sign-house-bill-1.

Electronically Filed - COLE CIRCUIT - September 29, 2025 - 04:33 PM

36. Hoskins claimed the petition sample sheets could not be processed because the Governor had not signed House Bill 1. *Id.*

37. Two days later, Hoskins sent Plaintiff von Glahn another letter purporting to supersede the September 12 letter.

38. Attached as **Exhibit D** is a true and correct copy of the September 14, 2025 letter the Secretary of State sent to Plaintiff von Glahn.

39. That letter states that "[b]ecause the statutory review process is still pending, the Secretary of State has not yet made a final determination whether your referendum petition may be accepted for processing or circulation."

40. Hoskins' September 14 letter further says that Plaintiff von Glahn's "submission has been formally transmitted to the Attorney General in accordance with §116.332, and the statutory timeline for review is now running."

41. Secretary Hoskins had until September 27, 2025 to approve or reject the September 12 referendum sample sheets as to form.

42. On September 15, 2025, Plaintiff von Glahn submitted another referendum petition sample sheet.

43. That day Secretary Hoskins sent a third letter to Plaintiff von Glahn.

44. Attached as **Exhibit E** is a true and correct copy of the September 15, 2025 letter the Secretary sent to Plaintiff von Glahn.

45. The letter states that "the Secretary of State has not yet made a final determination whether your referendum petition may be accepted for processing and circulation" and that the "statutory review process is still pending."

Electronically Filed - COLE CIRCUIT - September 29, 2025 - 04:33 PM

46.     In addition, the letter states that "[o]nce the Attorney General's opinion and the Auditor's fiscal note are received and reviewed, this office will issue a written decision either approving the form of the petition for circulation or rejecting it with stated reasons."

47.     Secretary Hoskins had until September 30, 2025 to approve or reject the September 15, 2025 referendum sample sheet as to form.

48.     On September 16, 2025, Plaintiffs advised the Secretary that he may not reject referendum sample sheets for *any reason* other than a reason of form found in Section 116.030, RSMo.

49.     Attached as **Exhibit F** is a true and correct copy of the September 16, 2025 letter sent by Plaintiffs' counsel to Secretary of State Hoskins.

50.     Plaintiff von Glahn's sample sheets substantially comply with the requirements of Section 116.030, RSMo.

Secretary's Rejection of Plaintiff von Glahn's Referendum Sample Sheets

51.     On September 26, 2025, the Secretary of State sent Plaintiff von Glahn three identical letters rejecting the referendum sample sheets (submitted on September 12 and 15) as to form.

52.     Attached as **Exhibit G** are true and correct copies of the September 26, 2025 letters.

53.     The September 26 letters purport to rely on the Attorney General's opinion that the referendum petitions may not be approved as to form because "HB 1 has not been signed by Governor Kehoe. Nor has time to return HB 1 expired."

7

Electronically Filed - COLE CIRCUIT - September 29, 2025 - 04:33 PM

54.    The Secretary rejected the referendum sample sheets for a reason *other than* form.

55.    A rejection of the sample sheets also threatens to cast doubt on the validity of any signatures gathered on those forms.

56.    On information and belief, the Secretary intends to declare any signatures gathered before the governor signed House Bill 1 invalid.

57.    To date, Plaintiffs' campaign has gathered more than 20,000 signatures of Missouri voters supporting the referendum on House Bill 1.

58.    These and any other signatures must be counted if the referenda sample sheet substantially complies with the form specified by the statute.

59.    A rejection of the referenda sample sheets hinders Plaintiffs' right to place a referendum before the voters.

60.    The Secretary's decision to reject Plaintiff von Glahn's sample sheets is not subject to administrative review which determines the rights and privileges of the Plaintiffs to engage in the referendum process.

61.    Other than this action there is no other provision for judicial inquiry or review of the Secretary's decision.

62.    The Secretary's decision was unlawful and/or involves an abuse of discretion as discussed herein.

### Count I - Violation of Section 116.030, RSMo

63.    Plaintiffs incorporate by reference all preceding paragraphs.

8

Electronically Filed - COLE CIRCUIT - September 29, 2025 - 04:33 PM

64. The Secretary of State's review and approval or rejection as to form of a referendum petition is limited to what is described in Section 116.030.

65. That statute "addresses the required form of a referendum petition sample sheet, and includes an exemplar form." *American Civil Liberties Union v. Ashcroft,* 577 S.W.3d 881, 890 (Mo. App. 2019).

66. If the form of the referendum petition sample sheet "is followed substantially and the requirements of section 116.050 and section 116.080 are met, it shall be sufficient, disregarding clerical and merely technical errors." *Id.;* §116.030, RSMo.

67. Plaintiffs submitted referendum sample sheets after the General Assembly passed House Bill 1, but prior to the Governor signing House Bill 1.

68. The Governor signed House Bill 1 two days after the Secretary of State rejected the referendum petitions "as to form."

69. The only reason the Secretary of State rejected Plaintiffs 'referendum sample sheets is because the Governor had not yet signed House Bill 1. *See* Ex. F.

70. Whether the Governor has signed the bill prior to the referendum sample sheet submission is not a matter of form.

71. The Secretary of State exceeded his authority by rejecting Plaintiffs' referendum sample sheets because the Governor had not yet signed House Bill 1.

72. The Secretary's decision was unlawful because the sample sheets substantially followed the form mandated by statute.

Electronically Filed - COLE CIRCUIT - September 29, 2025 - 04:33 PM

73.     Plaintiffs are entitled to a declaratory judgment that the Secretary of State may not reject a referendum petition sample sheet because the governor has not signed the bill upon which the referendum is being requested

74.     Plaintiffs are also entitled to a declaratory judgment that their referendum sample sheets are valid as to form because they substantially comply with the requirements of Section 116.030, RSMo.

75.     Plaintiffs seek an injunction prohibiting the Secretary of State and anyone acting in concert with him from rejecting Plaintiffs' referendum petition sample sheets on the basis that the Governor has not signed House Bill 1.

76.     Plaintiffs also seek an injunction prohibiting the Secretary of State and anyone acting in concert with him from taking any other actions with respect to the referendum petition on the basis that it does not comply with the form proscribed by statute.

77.     If an injunction does not issue, Plaintiffs will suffer irreparable harm because "delays in the State's performance of its obligations in the pre-signature collection stage of the referendum process can have the practical effect of foreclosing meaningful exercise of the power of referendum." 577 S.W.3d at 890.

78.     Plaintiffs lack an adequate remedy at law to protect their interests.

## Count II - The Constitution and Statutes Do Not Require Approval as to Form to Gather Valid Signatures

79.     Plaintiffs incorporate by reference all preceding paragraphs.

10

Electronically Filed - COLE CIRCUIT - September 29, 2025 - 04:33 PM

80. The Constitution requires only that "[r]eferendum petitions [are] filed with the secretary of state not more than ninety days after the final adjournment of the session of the general assembly which passed the bill on which the referendum is demanded." Mo. Const. art. III, §52(a).

81. Statute only requires that before a referendum petition "may be circulated for signatures, a sample sheet must be submitted to the secretary of state in the form in which it will be circulated." § 116.332.1, RSMo.

82. The Constitution does not authorize the Secretary of State to reject signatures because they were gathered before a referendum is approved as to form.

83. The statute does not authorize the Secretary of State to reject signatures because they were gathered before a referendum is approved as to form.

84. Plaintiffs submitted sample sheets prior to gathering signatures on the referendum on HB 1. *See* Ex. A. Plaintiffs therefore complied with all requirements.

85. Plaintiffs are entitled to a declaratory judgment that approval as to form is not required to gather signatures.

86. Plaintiffs are also entitled to a declaratory judgment that signatures are not *per se* invalid because they were gathered prior to the Secretary of State approving the referendum petition sample sheet as to form.

WHEREFORE, Plaintiffs pray this Court:

a. Declare that the Secretary of State may not reject a referendum petition sample sheet because the governor has not signed the bill upon which the referendum is being requested;

11

Electronically Filed - COLE CIRCUIT - September 29, 2025 - 04:33 PM

b.     Declare that Plaintiffs' referendum sample sheets are valid as to form because they substantially comply with the requirements of Section 116.030, RSMo;

c.     Declare that Signatures may be gathered once a sample sheet is submitted to the Secretary of State and such signatures may not be rejected because they were gathered prior to the Secretary issuing an approval of the sample sheet as to form.

d.     Prohibit the Secretary of State and anyone acting in concert with him from rejecting Plaintiffs' referendum petition sample sheets on the basis that the Governor has not signed House Bill 1;

e.     Prohibit the Secretary of State and anyone acting in concert with him from taking any other actions with respect to the referendum petition on the basis that it does not comply with the form proscribed by statute;

f.     Prohibit the Secretary of State and anyone acting in concert with him from rejecting signatures gathered on Plaintiffs' referendum petition because those signatures were gathered prior to the approval of the referendum sample sheet as to form and/or were gathered prior to the governor signing House Bill 1;

g.     Award equitable and just costs because the Secretary of State's actions in rejecting the referendum sample sheets were intentional misconduct to thwart Plaintiffs' referendum rights; and

h.     For any such other relief the Court deems just and proper.

Electronically Filed - COLE CIRCUIT - September 29, 2025 - 04:33 PM

Respectfully Submitted,

**STINSON LLP**
/s/ *Charles W. Hatfield*
Charles W. Hatfield, MO No. 40363
Alixandra S. Cossette, MO No. 68114
Alexander C. Barrett, MO No. 68695
Greta M. Bax, MO No. 73354
230 W. McCarty Street
Jefferson City, Missouri 65101
Phone: (573) 636-6263
Facsimile: (573) 636-6231
chuck.hatfield@stinson.com
alix.cossette@stinson.com
alexander.barrett@stinson.com
greta.bax@stinson.com

*Attorneys for Plaintiffs*

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing was filed electronically via the Missouri Case.net e-filing system, which notified all counsel of record on this 29th day of September, 2025.

/s/*Charles W. Hatfield*
Attorney for Petitioner

13