**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | | |
|---|---|---|
| MISSOURI GENERAL ASSEMBLY, | ) | |
| DENNY HOSKINS, in his official capacity | ) | |
| as Missouri Secretary of State, and | ) | |
| STATE OF MISSOURI, | ) | |
| | ) | |
|     *Plaintiffs*, | ) | |
| | ) | |
| v. | ) | Case No. 4:25-cv-01535-ZMB |
| | ) | |
| RICHARD VON GLAHN and | ) | Hon. Zachary M. Bluestone |
| PEOPLE NOT POLITICIANS, | ) | |
| | ) | |
|     *Defendants*. | ) | |
| | ) | |

**DEFENDANTS' REPLY MEMORANDUM**
**IN SUPPORT OF THEIR MOTION TO DISMISS**

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ...................................................................................................... ii

INTRODUCTION ...................................................................................................................1

ARGUMENT ..........................................................................................................................2

I.    There Is No Path to the Merits of Plaintiffs' Claims. ...............................................2

    A.    No Plaintiff Has Standing. .................................................................................2

    B.    This Suit Is Unripe. ...........................................................................................6

    C.    Plaintiffs Lack a Cause of Action. .....................................................................7

II.    Plaintiffs' Merits Theories Are Baseless. ...............................................................9

    A.    A Century of Supreme Court Precedent Forecloses Plaintiffs' Federal Claim. ...............................................................................................................10

    B.    This Court Should Not Reach Plaintiffs' State-Law Claim. ...............................11

    C.    Plaintiffs' State-Law Claim Is Meritless in Any Event. .....................................12

        1.    No clear-statement rule applies. .................................................................12

        2.    If a clear-statement rule applies, it is satisfied. .........................................14

III.    Abstention Is Warranted. ......................................................................................14

CONCLUSION.......................................................................................................................15

CERTIFICATE OF SERVICE AND COMPLIANCE...................................................................17

i

# TABLE OF AUTHORITIES

**CASES**

*Abbott v. Perez*, 585 U.S. 579 (2018) ........................................................................7

*Arizona State Legislature v. Arizona Independent Redistricting Commission*,
   576 U.S. 787 (2015)...........................................................................................10, 11

*Ashwander v. TVA*, 297 U.S. 288 (1936)....................................................................14

*Axon Enterprise v. FTC*, 598 U.S. 175 (2023)............................................................4

*California v. Texas*, 593 U.S. 659 (2021) ....................................................................5

*Carson v. Simon*, 978 F.3d 1051 (8th Cir. 2020) ........................................................7

*City of Cuyahoga Falls v. Buckeye Community Hope Foundation*,
   538 U.S. 188 (2003)................................................................................................7

*Corman v. Torres*, 287 F. Supp. 3d 558 (M.D. Pa. 2018) .......................................4, 5

*Dakota, Minnesota & Eastern Railroad Corp. v. Schieffer*, 715 F.3d 712
   (8th Cir. 2013) (per curiam)...................................................................................2

*Dean v. Olibas*, 129 F.3d 1001 (8th Cir. 1997) ..........................................................8

*Edmonson v. Leesville Concrete Co.*, 500 U.S. 614 (1991).........................................8

*E.L. ex rel. White v. Voluntary Interdistrict Choice Corp.*, 864 F.3d 932
   (8th Cir. 2017)........................................................................................................4

*FAA v. Cooper*, 566 U.S. 284 (2012)........................................................................14

*Fred Meyer, Inc. v. Casey*, 67 F.3d 1412 (9th Cir. 1995)...........................................8

*Grayned v. City of Rockford*, 408 U.S. 104 (1972)....................................................9

*Green Room LLC v. Wyoming*, Nos. 24-8053 etc., 2025 WL 2999673
   (10th Cir. Oct. 27, 2025)........................................................................................9

*Hawke v. Smith*, 253 U.S. 221 (1920)......................................................................10

*Lac du Flambeau Band of Lake Superior Chippewa Indians v. Coughlin*,
   599 U.S. 382 (2023)..............................................................................................14

*Lance v. Coffman*, 549 U.S. 437 (2007) (per curiam)................................................5

*LeBlanc-Sternberg v. Fletcher*, 67 F.3d 412 (2d Cir. 1995)......................................8

ii

*Manhattan Community Access Corp. v. Halleck*, 587 U.S. 802 (2019) ....................................8

*Minnesota Citizens Concerned for Life v. FEC*, 113 F.3d 129 (8th Cir. 1997)........................7

*Moody v. Hicks*, 956 S.W.2d 398 (Mo. Ct. App. 1997)................................................................9

*Moore v. Circosta*, 494 F. Supp. 3d 289, 324 (M.D.N.C.),
    *injunction denied sub nom. Wise v. Circosta*, 978 F.3d 93
    (4th Cir. 2020) (en banc)..........................................................................................................3, 5

*Moore v. Harper*, 600 U.S. 1 (2023)...........................................................................1, 10, 11

*Ohio ex rel. Davis v. Hildebrant*, 241 U.S. 565 (1916) .......................................................10, 13

*Railroad Commission v. Pullman Co.*, 312 U.S. 496 (1941)....................................................15

*Rendell-Baker v. Kohn*, 457 U.S. 830 (1982) .........................................................................8

*Royal Canin U.S.A., Inc. v. Wullschleger*, 604 U.S. 22 (2025) .........................................10, 11

*SD Voice v. Noem*, 60 F.4th 1071 (8th Cir. 2023) ....................................................................9

*Sebelius v. Auburn Regional Medical Center*, 568 U.S. 145 (2013) ........................................14

*Siler v. Louisville & Nashville Railroad Co.*, 213 U.S. 175 (1909)....................................13, 14

*Smiley v. Holm*, 285 U.S. 355 (1932) ....................................................................................10

*State ex rel. Nixon v. American Tobacco Co.*, 34 S.W.3d 122 (Mo. 2000) ..............................3

*Texas v. United States*, 523 U.S. 296 (1998) .........................................................................7

*United States v. Gradwell*, 243 U.S. 476 (1917) ...................................................................12

*Virginia House of Delegates v. Bethune-Hill*, 587 U.S. 658 (2019)........................................3

*Wanna v. RELX Group*, 142 F.4th 1102 (8th Cir. 2025) .......................................................11

*West Virginia v. EPA*, 597 U.S. 697 (2022).........................................................................13

*Wilson v. Miller*, 821 F.3d 963 (8th Cir. 2016).................................................................11, 12

**CONSTITUTIONAL PROVISIONS AND STATUTES**

U.S. Const. art. I, § 4, cl. 1 (Elections Clause) ................................................................ *passim*

U.S. Const. art. II, § 1, cl. 2 (Electors Clause).........................................................................7

U.S. Const. amend. I .....................................................................................................1, 2, 7, 8, 9

iii

28 U.S.C. § 1367(c)(3)..............................................................................................................10

42 U.S.C. § 1983......................................................................................................................9

Ohio Const. art. II, § 1 (1915)..................................................................................................12

Mo. Const. art. III, § 3(i).....................................................................................................12, 14

Mo. Const. art. III, § 7(h)....................................................................................................12, 14

Mo. Const. art. III, § 49 ......................................................................................................12, 14

Mo. Rev. Stat. § 1.185.8 ...........................................................................................................3

Mo. Rev. Stat. § 1.185.9 ...........................................................................................................3

Mo. Rev. Stat. § 27.060 ............................................................................................................3

**INTRODUCTION**

In this unprecedented lawsuit brought by a State and State officials seeking to enjoin their own citizens and constituents from exercising their rights to petition their government, Plaintiffs invite this Court to overstep its Article III jurisdiction, ignore fundamental tenets of judicial federalism, entertain claims squarely foreclosed by binding Supreme Court precedent, and offend basic First Amendment principles in the process. This Court should decline that invitation.

Plaintiffs raise a single federal claim: that Article I's Elections Clause prohibits referenda on congressional redistricting. They also raise a state-law claim, arguing that the Missouri Constitution does not clearly authorize such referenda. Due to a litany of threshold issues—from standing to ripeness to the existence of a cause of action—this Court cannot reach either claim. But even if the Court could overlook those issues, Plaintiffs' suit is a nonstarter. As to the federal claim, Plaintiffs barely mention the Supreme Court's recent decision in *Moore v. Harper*, 600 U.S. 1 (2023), or the century of cases it reaffirmed, all of which squarely foreclose Plaintiffs' Elections Clause theory. Plaintiffs' state-law claim is equally meritless: There is no relevant "clear-statement" rule governing interpretation of the Missouri Constitution, and even if there were, the Missouri Constitution unambiguously permits referenda on congressional-redistricting enactments.

In truth, it is unclear why this suit is in federal court at all. Plaintiffs argue that "[t]he straightforward way to resolve this case" is for this Court to interpret the Missouri Constitution and "hold that Missouri never made a conscious choice to divest the General Assembly of its authority over redistricting." ECF No. 29, at 10 ("MTD Opp."). State constitutional interpretation is not the role of a federal court. The "straightforward way to resolve this case"—if this Court even reaches the merits—is to dismiss the federal claim and leave state law to state courts.

Accepting Plaintiffs' claims would also eviscerate Defendants' First Amendment right to petition their government. Plaintiffs would have this Court hold that "[t]he First Amendment . . .

1

does not apply." MTD Opp. 32. Plaintiffs say they can sue their own citizens to stop their petitioning because, by simply using the referendum process—a process *exclusively* available to private citizens under state law—Defendants have *become* the State itself. If that were true, there would be no right to petition. A private citizen would become a state actor—and lose his First Amendment protection—any time he petitioned his government. That cannot be correct.

Accordingly, this Court should dismiss this suit, or at the very least abstain and hold it in abeyance to allow the Missouri courts to provide an authoritative construction of state law.

**ARGUMENT**

**I.    There Is No Path to the Merits of Plaintiffs' Claims.**

Several independent procedural deficiencies prevent this Court from reaching the merits. *First*, no Plaintiff has Article III standing to bring an Elections Clause claim, the only federal claim in this suit and thus the only basis for federal jurisdiction. *Second*, the entire dispute is unripe. *Third*, Plaintiffs lack a cause of action for either their federal or state-law claim.

**A.    No Plaintiff Has Standing.**

No Plaintiff has Article III standing to assert a federal claim—not the General Assembly (which has not authorized this suit), not the Secretary of State (who may not assert an Elections Clause claim), and not the State (for whom Plaintiffs have no theory of standing). "[C]ourts have uniformly held that, when original federal jurisdiction is wholly lacking (as here)," district courts have "no discretion to exercise supplemental jurisdiction over remaining state-law claims." *Dakota, Minn. & E. R.R. Corp. v. Schieffer*, 715 F.3d 712, 713 (8th Cir. 2013) (per curiam). This Court should accordingly dismiss the case in its entirety.

***General Assembly.*** Plaintiffs concede that the General Assembly—the lead plaintiff—has not authorized this suit. *See* MTD Opp. 16–17. Plaintiffs thus turn to attacking a straw man, noting that the Attorney General is the proper legal representative for the General Assembly. *See*

2

*id.* (citing Mo. Rev. Stat. § 27.060).  True enough, when the General Assembly duly authorizes litigation.  But that does not obviate the need for authorizing votes or statutory authorization.  *See Moore v. Circosta*, 494 F. Supp. 3d 289, 324 (M.D.N.C.) (rejecting standing in absence of authorizing votes and state-law authorization), *injunction denied sub nom. Wise v. Circosta*, 978 F.3d 93 (4th Cir. 2020) (en banc).[1]  Here, there has not been an authorizing vote in both General Assembly chambers.  *See* ECF No. 22, at 6 & n.3 ("MTD Br.").  Nor is there statutory authorization.  Plaintiffs cannot rely on Mo. Rev. Stat. § 1.185.8–.9, which authorizes suit only where (as has not occurred here) the leaders of the two legislative houses jointly intervene in ongoing litigation.  This statute does not give the Attorney General carte blanche to file complaints on the General Assembly's behalf outside of that joint intervention procedure.  Per Defendants' research, it seems the General Assembly has *never* brought an action in its own name, which is unsurprising given the lack of statutory authorization for it to do so.[2]

In any event, the General Assembly has not suffered a cognizable Article III injury because circulating a single referendum petition does not "*permanently* deprive[]" the General Assembly of redistricting authority.  *Va. House of Delegates v. Bethune-Hill*, 587 U.S. 658, 668 (2019); *see* MTD Br. 7.  Rather than contest this legal rule, Plaintiffs make a policy argument: that allowing a referendum here "will open Pandora's Box" and subject every future redistricting act to a referendum.  MTD Opp. 18.  If the General Assembly wants to remove congressional redistricting from the referendum process, it can seek to amend the Missouri Constitution, as was done with

---

[1] Plaintiffs get no help from *State ex rel. Nixon v. American Tobacco Co.*, 34 S.W.3d 122 (Mo. 2000), which says only that the Attorney General enjoys "broad" common-law powers. *Id.* at 136. The case says nothing about what the General Assembly must do to authorize a lawsuit.

[2] On November 14, 2025, the Minority Floor Leader of the Missouri Senate filed a complaint against the Attorney General with the Missouri Supreme Court Office of Chief Disciplinary Counsel, alleging that Plaintiffs' counsel filed this suit on the General Assembly's behalf without statutory authority or authorization from the General Assembly itself. *See* Cossette Decl. Ex. B.

3

legislative redistricting.  In any case, Plaintiffs' concerns about proliferation of redistricting referenda are unfounded.  Referenda in general are rare; a congressional-redistricting plan has been put to a referendum only once in Missouri history, and the clear impetus for the current referendum is the General Assembly's unprecedented decision to redistrict mid-decade.  *See* MTD Br. 3, 26–28.

Moreover, the General Assembly's purported injury is not caused by Defendants and is speculative.  Plaintiffs do not contest that the General Assembly's injury, to the extent it materializes, would be caused by a series of intervening and necessary steps, including the Secretary of State's certification of the referendum to the ballot.  *See* MTD Br. 8; MTD Opp. 18–19.  Article III's causation requirement is not satisfied where an injury is caused "by some third party, not the defendant." *E.L. ex rel. White v. Voluntary Interdistrict Choice Corp.*, 864 F.3d 932, 936 (8th Cir. 2017) (internal quotation marks omitted).  And because any purported harm to the General Assembly's redistricting authority depends on future acts by third parties, it remains entirely speculative whether the petition will have any effect on the General Assembly's redistricting authority.[3]

The General Assembly's lack of standing is fatal to Plaintiffs' federal claim, and thus their entire case.  The General Assembly is the only party whose interest Plaintiffs' federal claim seeks to vindicate:  To the extent the Elections Clause protects rights under Plaintiffs' theory, those rights belong to the General Assembly alone.  *See Corman v. Torres*, 287 F. Supp. 3d 558, 573 (M.D. Pa. 2018) ("[T]he Elections Clause claims . . . belong, if they belong to anyone, only to the . . . General Assembly.").  Hence, it was critical for the Attorney General to write in "General Assembly" at the top of the complaint despite lacking any authorization from that body to pursue this

---

[3] Contra Plaintiffs, this is not a "'here-and-now injury' that courts can redress without waiting for the process to end."  MTD Opp. 19 (quoting *Axon Enter. v. FTC*, 598 U.S. 175, 191 (2023)).  The General Assembly has not yet been "subject[ed]" to anything. *Axon*, 598 U.S. at 191.  Even if it had, its rights are not "'effectively lost' if review is deferred." *Id.* at 192; *see* MTD Br. 28–32; pp. 14–15, *infra* (noting other opportunities to review General Assembly's claims).

case.  But the General Assembly is improperly added and lacks standing anyway, leaving no plaintiff to prosecute the sole federal claim.  As a result, the entire suit must be dismissed.

***Secretary of State.***  The Secretary of State also lacks standing.  Courts have repeatedly held that plaintiffs other than a state legislative body lack standing to assert an Elections Clause violation.  *See Lance v. Coffman*, 549 U.S. 437, 441–42 (2007) (per curiam); *Moore*, 494 F. Supp. 3d at 323–24; *Corman*, 287 F. Supp. 3d at 569, 573.  That reasoning applies equally to a state *executive* official.  After all, the "alleged usurpation of the General Assembly's power d[oes] not deprive [an executive official] of any rights vested personally in [him] by the Elections Clause." *Corman*, 287 F. Supp. 3d at 659.

Moreover, the Secretary's purported injuries are caused not by the allegedly unconstitutional referendum provision in Missouri's Constitution, but by the various Missouri statutes governing his processing of referenda.  *See* MTD Opp. 12–15.  The Secretary does not challenge those provisions as unlawful, and whatever injuries he may have suffered as a result of these provisions do not give him free rein to challenge *other* provisions of Missouri law—including the Missouri constitutional provision at issue here.  *See California v. Texas*, 593 U.S. 659, 678–80 (2021) (no standing where the asserted injuries flowed from statutory provisions other than the one at issue).

In any event, the Secretary has not suffered any Article III injury.  Plaintiffs identify no case holding that costs incurred defending against litigation create Article III standing.  Litigation costs are nothing like "compliance costs, incurred in response to challenged actions." MTD Opp. 12–13.  And to the extent financial injury is relevant here, Plaintiffs have not identified any additional costs expended—much less *by the Secretary*—as a result of ongoing litigation.  Indeed, Plaintiffs nowhere allege that the Secretary has any meaningful role in any of the pending suits— other than the mention of his name in the caption.  That does not suffice to show injury-in-fact.

The Secretary's various statutory responsibilities in processing a referendum, MTD Opp. 13–14, also do not give rise to Article III standing. As to responsibilities already carried out, those cannot support standing for injunctive relief. *See* MTD Br. 10. As to ongoing responsibilities, as Defendants have explained—and Plaintiffs do not dispute—that the Secretary must do his job pursuant to Missouri law does not confer standing. *Id.* at 9. And any harm from theoretical future processing of the referendum is speculative. Even assuming Defendants submit the requisite number of signatures, the Secretary cannot claim injury based on burdens stemming from his own conduct in processing the petition. *See* MTD Opp. 15 (noting Secretary may reject the petition).

*The State.* Plaintiffs offer no independent theory of injury to the State. Rather, as Plaintiffs nowhere contest, the State's standing is based entirely on the Secretary of State's resource expenditures. MTD Br. 11. For the same reasons the Secretary lacks standing, so does the State.

## B.   This Suit Is Unripe.

Plaintiffs' claims are also unripe. For any Elections Clause dispute to materialize, Defendants would have to timely collect enough valid signatures and submit their petition;[4] the Secretary of State would have to deem the petition valid; and the underlying redistricting enactment would have to survive multiple ongoing state-court suits challenging it.[5] It is highly speculative to assume that each of those events will come to pass. In the meantime, Plaintiffs suffer no prejudice.

Fighting that conclusion, Plaintiffs point to the allegedly "substantial resource[s]" that the Secretary of State expends "on an *ongoing* basis." MTD Opp. 20. As noted above, the claim of ongoing harms suffers from multiple defects, which are as fatal to ripeness as to standing. Next,

---

[4] Plaintiffs claim that Defendants have already collected the requisite number of signatures, *see* MTD Opp. 19, but there is ongoing litigation about the validity of many of those signatures.

[5] Plaintiffs protest that "[t]hese state-court cases present entirely distinct legal questions" so are "no bar to proceedings in this case." MTD Opp. 22. That misses the point. Several ongoing state proceedings concern the lawfulness of the underlying redistricting legislation. *See id.* at 21–22. If any of those state suits invalidated the legislation, the referendum would become moot.

6

Plaintiffs cry "hardship" based on the "know[ledge]" that state referendum-review procedures are being used "to further an end that violates the Elections Clause." *Id.* at 20–21. "But that is an abstraction—and an abstraction no graver than" the "'threat to federalism'" the Supreme Court has held to be inadequate to establish ripeness. *Texas v. United States*, 523 U.S. 296, 302 (1998).[6]

In the end, Plaintiffs all but concede their suit is not ripe. They argue that the very issue raised in this suit—the propriety of a referendum on congressional redistricting—could not "at this point" be the subject of ongoing state litigation, asserting that the "Secretary of State's review at [the] filing stage is limited." MTD Opp. 22 (internal quotation marks omitted). Plaintiffs have no explanation for why this issue could be ripe in this Court while remaining unripe in state court.

### C.    Plaintiffs Lack a Cause of Action.

Plaintiffs effectively concede there is no equitable cause of action for a State, its legislature, or its officials to sue private citizens for engaging in First Amendment-protected petitioning activity. MTD Br. 15–18. So Plaintiffs say they can sue Defendants because they are state actors.[7] That theory is untenable under binding precedent, first principles, and the First Amendment.

On the law, the Supreme Court in *City of Cuyahoga Falls v. Buckeye Community Hope Foundation*, 538 U.S. 188 (2003), rejected the argument that private activity in a "citizen-driven" referendum effort constituted state action. *Id.* at 196. Other precedent establishes the same. *See*

---

[6] *Minnesota Citizens Concerned for Life v. FEC*, 113 F.3d 129 (8th Cir. 1997), provides no support for Plaintiffs' claimed hardship, because the asserted hardship there (unlike here) involved the "chill[ing]" of the plaintiffs' "protected First Amendment activity." *Id.* at 132.

[7] Plaintiffs make two passing suggestions that state officials may sue private citizens to vindicate purported Elections Clause rights. First, citing *Abbott v. Perez*, 585 U.S. 579, 601 (2018), Plaintiffs say that "state-executive-branch officials may seek to enforce—through an equitable cause of action seeking injunctive relief—the rules of an upcoming election." MTD Opp. 24. But the cited page of *Perez* says nothing relevant, and *Perez* involved an action *against*, not by, state officials. Plaintiffs also claim that the Eighth Circuit recognized a right of action under *Article II's* Electors Clause in *Carson v. Simon*, 978 F.3d 1051 (8th Cir. 2020), MTD Opp. 24, but *Carson* nowhere addresses that issue and also involved a suit by private parties and *against* a state official alleged to be acting *ultra vires*.

7

*Fred Meyer, Inc. v. Casey*, 67 F.3d 1412, 1414–16 (9th Cir. 1995); *LeBlanc-Sternberg v. Fletcher*, 67 F.3d 412, 432–33 (2d Cir. 1995).  Plaintiffs cite no case holding otherwise.

As to Plaintiffs' appeal to first principles, they claim that referendum activity is state action because legislation is a "traditional government function."  MTD Opp. 26.  But the relevant question "is whether the function performed has been 'traditionally the *exclusive* prerogative of the State.'"  *Rendell-Baker v. Kohn*, 457 U.S. 830, 842 (1982) (internal quotation marks omitted).  As this case illustrates, "legislation in [Missouri] is not the exclusive prerogative of the state."  *Fred Meyer*, 67 F.3d at 1416.  Plaintiffs next emphasize the State's involvement in the referendum process.  MTD Opp. 26–27.  But state facilitation of private activity is ubiquitous; the proper inquiry for state-action purposes is whether the government has "compel[led] [Defendants] to take a particular action" or has "act[ed] jointly" with Defendants.  *Manhattan Cmty. Access Corp. v. Halleck*, 587 U.S. 802, 809 (2019).  That is not the case here.  Defendants "d[o] not rely on governmental assistance or benefits" to collect signatures or submit a petition; they do so "on [their] own and of [their] own free will, without the aid or encouragement of the state"; and they act as "private citizen[s]."  *Dean v. Olibas*, 129 F.3d 1001, 1005–06 (8th Cir. 1997) (applying *Edmonson v. Leesville Concrete Co.*, 500 U.S. 614 (1991)).  The entire point of the petition and referendum process is to provide a means for private citizens—acting as such—to petition their government for an opportunity to approve or reject legislation; the First Amendment recognizes and protects that activity.  The upshot of Plaintiffs' theory is to erase the petition right altogether—any time a private citizen asks the government to take any action, he becomes the state and lacks constitutional protection.

It comes as no surprise, then, that any cause of action here would offend the First Amendment.  *See* MTD Br. 17–18, 35–37.  Plaintiffs say they are not seeking to bar Defendants from exercising their petition rights, only to prevent them from "using a state public-policy-creating

8

apparatus for an unconstitutional means." MTD Opp. 25. But a citizen has no less right to petition for legislation simply because the legislation's opponents raise arguments that it might be preempted by federal law. Plaintiffs also make the remarkable suggestion that "[t]he First Amendment . . . does not apply" because Defendants have other theoretical avenues available to seek changes to Missouri's redistricting maps. *Id.* at 32; *see id.* at 31–33. It should "go[] without saying that one is not to have the exercise of [a First Amendment right] abridged on the plea that it may be exercised in some other place." *Grayned v. City of Rockford*, 408 U.S. 104, 118 n.40 (1972) (internal quotation marks omitted); *see SD Voice v. Noem*, 60 F.4th 1071, 1080 (8th Cir. 2023).

Even crediting Plaintiffs' state-actor arguments, that would *at most* give them an equitable cause of action for their *federal* claim.[8] Plaintiffs have nowhere pointed to a state-law cause of action. *See* MTD Opp. 23. And none exists. Missouri has not even enacted a state-law cause of action analogous to 42 U.S.C. § 1983 for suits against *actual* state officials for violations of the state constitution. *See Moody v. Hicks*, 956 S.W.2d 398, 402 (Mo. Ct. App. 1997).

The only way to make sense of the Secretary's odd choice to sue the referendum proponents now—rather than simply wait for, and then reject, the referendum—is that he seeks preemptive declaratory relief before the proponents sue *him* in state court. Plaintiffs effectively admit they are seeking such pure declaratory relief. *See* MTD Opp. 20–21. As Defendants have explained, that declaratory suit is not within this Court's federal-question jurisdiction. *See* MTD Br. 12–15.

## II.    Plaintiffs' Merits Theories Are Baseless.

The complaint advances two claims, one federal and one state. *See* ECF No. 1, ¶¶ 70, 74

---

[8] It is doubtful, in any event, that the *Secretary* or the *State* would have a federal claim. Plaintiffs cite a Tenth Circuit case for the proposition that a plaintiff has an equitable cause of action challenging allegedly preempted state law even if the plaintiff has no personal federal right to invoke. MTD Opp. 23. But the cited case holds exactly the opposite. *See Green Room LLC v. Wyoming*, Nos. 24-8053 etc., 2025 WL 2999673, at *5 & n.4 (10th Cir. Oct. 27, 2025) (plaintiff asserting an equitable cause of action must have "substantive rights" in the federal law it invokes).

("Compl."). The federal claim is plainly foreclosed by a century of Supreme Court precedent reaffirmed just two years ago. This Court should thus dismiss that claim and "kick the case to state court" without addressing the state-law claim. *Royal Canin U.S.A., Inc. v. Wullschleger*, 604 U.S. 22, 32 (2025); *see* 28 U.S.C. § 1367(c)(3). Regardless, Plaintiffs' state-law claim is meritless. There is no "Elections Clause clear-statement rule," and if there were, it is satisfied here.

**A.    A Century of Supreme Court Precedent Forecloses Plaintiffs' Federal Claim.**

In *Moore v. Harper*, 600 U.S. 1 (2023), the Supreme Court squarely rejected the theory behind Plaintiffs' lone federal claim: that the Elections Clause assigns congressional-redistricting power "only to 'the Legislature' of 'each State,'" Compl. ¶ 67 (quoting U.S. Const. art. I, § 4, cl. 1), so a referendum here would "violate[] the Elections Clause," MTD Opp. 12. In so doing, the Supreme Court reaffirmed *Ohio ex rel. Davis v. Hildebrant*, 241 U.S. 565, 569 (1916), which held that a provision in the Ohio Constitution generally authorizing referenda—and materially identical to the Missouri provision here—did not offend the Elections Clause when applied to a congressional-redistricting enactment. As *Moore* made clear, *Hildebrant* and a wall of cases since foreclose the "independent state legislature" theory Plaintiffs attempt to advance again here. *See, e.g.*, *Hawke v. Smith*, 253 U.S. 221, 230–31 (1920); *Smiley v. Holm*, 285 U.S. 355, 371–73 (1932); *Ariz. State Legislature v. Ariz. Indep. Redistricting Comm'n*, 576 U.S. 787, 805–09 (2015).

Saying almost nothing about *Moore*, Plaintiffs attempt to distinguish *Hildebrant* for their *state*-law claim, but that does nothing to rehabilitate their federal claim. Plaintiffs note that the Ohio constitutional provision had been interpreted by the state courts before reaching the Supreme Court. MTD Opp. 6. But the same is true in Missouri, *see* MTD Br. 27–28, and in any event, a state court's interpretation (or lack thereof) of a state-law provision has no bearing on what the

10

federal Constitution allows.[9]  As to all the post-*Hildebrant* cases expressly and repeatedly reaf-firming (in both majority and dissenting opinions) that subjecting congressional redistricting to a referendum does not violate the Elections Clause, Plaintiffs can muster only the objection that these references to the referendum power are "stray, unreasoned dicta."  MTD Opp. 6 (citing MTD Br. 27–28).[10]  Hardly.  Plaintiffs' federal-law Elections Clause claim is squarely foreclosed by Supreme Court precedent, and this Court should dismiss it.

## B.    This Court Should Not Reach Plaintiffs' State-Law Claim.

Dismissal of Plaintiffs' federal claim should end the suit.  The complaint acknowledges that Count 2 is a state-law claim over which this Court would have only supplemental jurisdiction.  Compl. ¶ 24.  Plaintiffs have not rebutted or responded to Defendants' point that this Court should not exercise supplemental jurisdiction over that claim if it dismisses Count 1.  MTD Br. 28 n.15.

"When a district court dismisses all the claims over which it has original jurisdiction, it is usually appropriate to decline supplemental jurisdiction."  *Wanna v. RELX Grp.*, 142 F.4th 1102, 1107 (8th Cir. 2025); *see Royal Canin*, 604 U.S. at 32.  That is especially true when federal claims are dismissed early in the case.  *See Wilson v. Miller*, 821 F.3d 963, 971 (8th Cir. 2016).  Given that Plaintiffs' federal-law claim is a nonstarter under binding Supreme Court precedent, this suit is really about a pure state-law issue: the meaning of the Missouri Constitution.  In light of the important state interests at stake, as well as the fact that the parties are already litigating related

_____

[9] Plaintiffs suggest *Hildebrant* was not an Elections Clause case.  MTD Opp. 6 n.1.  Plaintiffs are wrong.  *See, e.g.*, *Moore*, 600 U.S. at 23 (*Hildebrant* "considered the interplay between state constitutional provisions and a state legislature's exercise of authority *under the Elections Clause*" (emphasis added)).

[10] Plaintiffs do try to distinguish *Arizona State Legislature*.  MTD Opp. 10–12.  But unsuccessfully so.  The Court there primarily relied on *Hildebrant* and other Elections Clause precedents, *see* 576 U.S. at 805–09, not on the clarity of the Arizona Constitution's transfer of redistricting authority to the independent commission, MTD Opp. 10–11.  Regardless, were Plaintiffs' independent-state-legislature theory correct, it would not matter how clear the unconstitutional delegation was.  And Plaintiffs' policy arguments, *id.* at 11–12, do not trump Supreme Court precedent.

11

issues in state court and Plaintiffs have an available state forum for seeking relief, exercising sup-

plemental jurisdiction would be particularly inappropriate.  *See id.* at 970–71.

### C.    Plaintiffs' State-Law Claim Is Meritless in Any Event.

Though this Court should not reach it, Plaintiffs' state-law claim is meritless.  Plaintiffs do

not dispute that the Missouri Constitution authorizes referenda to review "any act" of the General

Assembly, Mo. Const. art. III, § 49, or that the congressional-redistricting enactment at issue is an

"act" of the General Assembly.  Nor do they dispute that the state constitution expressly excepts

from referenda legislative, but not congressional, redistricting plans.  *Id.* §§ 3(i), 7(h).  So Plaintiffs

must invent a rule of statutory construction under which even more is needed to authorize referenda

for congressional redistricting.  But no clear-statement rule has ever applied in Elections Clause

cases,[11] and even if it did, the Missouri Constitution is sufficiently clear to satisfy such a rule.

### 1.    No clear-statement rule applies.

Plaintiffs' novel "Elections Clause clear-statement rule" is flatly inconsistent with each of

the Supreme Court precedents noted above.  *See* MTD Br. 21–23.  The state-constitutional lan-

guage at issue in *Hildebrant* was materially identical to the language here; if authorization of ref-

erenda reviewing "any law" were insufficiently clear, Ohio Const. art. II, § 1 (1915), *Hildebrant*

would have come out differently.  Likewise, the Supreme Court in *Smiley* did not demand a "clear

statement" in the state constitution that the governor could veto not just all laws, but specifically

congressional-redistricting enactments.  Nor did the Supreme Court in *Moore* require a "clear

statement" authorizing state courts to review congressional-redistricting enactments in particular.

---

[11] Plaintiffs repeatedly invoke *United States v. Gradwell*, 243 U.S. 476 (1917), which observed that *Congress* has historically spoken clearly when it wishes to federally override state control over elections pursuant to its own Elections Clause power.  *Id.* at 485.  This is simply an application of the well-established federalism clear-statement canon and does not support the new rule Plaintiffs ask this Court to create.

12

Plaintiffs offer shifting reasons why their Elections Clause clear-statement rule has never appeared in a single Supreme Court case. MTD Opp. 6–7. In *Hildebrant*, Plaintiffs say, the Court implicitly applied the clear-statement rule by noting (in rejecting an argument related not to the Elections Clause but to "state power") that the Ohio Supreme Court had "conclusively" resolved the issue. 241 U.S. at 567–68; *see* MTD Opp. 6. In *Smiley*, the clear-statement rule went unaddressed either because the parties forgot to raise it or because gubernatorial vetoes are (for vague historical reasons) excepted. MTD Opp. 7. And *Moore* supposedly reflects yet another exception related to state judiciaries. *Id.* Plaintiffs' narrative—that all this was going on, unmentioned, in the background of these cases—is implausible. And it is also inconsistent with how clear-statement rules typically operate: They put the thumb on the scale for a particular result by demanding clarity in written *statutory law*. *See, e.g.*, *West Virginia v. EPA*, 597 U.S. 697, 736–37 (2022) (Gorsuch, J., concurring). Plaintiffs have no other examples—and offer no conceptual theory—of a clear-statement rule that can be satisfied so haphazardly. The real reason Plaintiffs' clear-statement rule has never been mentioned or applied is that *it does not exist*. In fact, the petitioners in *Moore* advocated for such a rule, and the Supreme Court demurred. MTD Br. 22–23.

That there is no Elections Clause clear-statement rule makes sense. As Defendants have explained, federal-law clear-statement rules are a tool to interpret *Congress's* enactments. MTD Br. 23–24.[12] Plaintiffs concede this is "generally true," but proffer one century-old counterexample: *Siler v. Louisville & Nashville Railroad Co.*, 213 U.S. 175 (1909), which Plaintiffs describe as applying constitutional avoidance in interpreting a Kentucky statute. MTD Opp. 5. Plaintiffs misunderstand *Siler*, which merely interpreted the statute at issue according to ordinary rules of

---

[12] Plaintiffs' defense of their rule begins by attacking Defendants' purported "insist[ence] that [clear-statement rules] only place a check on Congress" rather than "*preserve* Congress's power vis-à-vis the Executive." MTD Opp. 5. Defendants nowhere make such a claim.

13

construction "without reference to questions arising under the Federal Constitution." 213 U.S. at 193; *see id.* at 194–98; *Ashwander v. TVA*, 297 U.S. 288, 347 (1936) (citing *Siler* as an exemplar of resolving cases on statutory rather than constitutional grounds). In any event, Plaintiffs offer *no* examples of a clear-statement rule applied by a federal court to a state *constitution*.[13]

## 2.    If a clear-statement rule applies, it is satisfied.

This Court should decline Plaintiff's invitation to apply a new, federal, judicially created rule of statutory construction to state constitutions. But if the Court does apply such a rule, the Missouri Constitution would satisfy it. *See* MTD Br. 25–28. A clear-statement rule does not require an *explicit* statement; it simply requires a lack of ambiguity. *See Sebelius v. Auburn Reg'l Med. Ctr.*, 568 U.S. 145, 153 (2013). The Missouri Constitution is unambiguous: It provides for referenda on "any act" of the General Assembly, Mo. Const. art. III, § 49, and excepts some redistricting plans but not congressional-redistricting plans, from referenda, *id.* §§ 3(i), 7(h). There is thus no "plausible interpretation" of the Missouri Constitution under which congressional-redistricting enactments are not subject to referenda, so any theoretical clear-statement rule is satisfied. *Lac du Flambeau Band of Lake Superior Chippewa Indians v. Coughlin*, 599 U.S. 382, 388 (2023) (quoting *FAA v. Cooper*, 566 U.S. 284, 290 (2012)).

## III.    Abstention Is Warranted.

In any event, *Pullman* abstention is warranted if this case is not dismissed. Plaintiffs argue that abstention is proper "*only if* the case raises a federal constitutional question" whose answer "necessarily depends on state courts' construction of ambiguous state law," MTD Opp. 29 (internal quotation marks omitted), yet also claim that "[t]he straightforward way to resolve this case is to

---

[13] Plaintiffs assert that "the meaning of state law is a federal question" here. MTD Opp. 5. But the cited authority simply states that the U.S. Supreme Court has *jurisdiction* to review state-court decisions interpreting state law when federal law plays some role in the state court's interpretation.

hold that Missouri never made a conscious choice to divest the General Assembly of its authority over redistricting," *id.* at 10.  By Plaintiffs' own lights, then, answering the state-law question as they urge obviates the need to determine whether state law conflicts with the federal Constitution. That *is* the textbook context for *Pullman* abstention.

In purporting to apply the Eighth Circuit's test, Plaintiffs misunderstand the inquiry.  Plaintiffs suggest that the test fails because there is no *pending* state case where Plaintiffs can assert their claims.  (Though Plaintiffs concede that the Secretary of State *could* have raised these arguments as counterclaims were they ripe.  MTD Opp. 30.)  But that is not the proper analysis.  The test is about whether a state forum exists that *could* provide a remedy.  Indeed, in *Pullman* itself, there was no then-pending state-court suit; the Supreme Court instructed that the parties should proceed to *initiate* a state proceeding.  *See R.R. Comm'n v. Pullman Co.*, 312 U.S. 496, 501–02 (1941).  Plaintiffs could do the same.  Assuming (as Plaintiffs here argue) that they have standing and a cause of action and that their suit is ripe, they could file this very suit in state court today.

Even taking Plaintiffs' arguments on their own misguided terms, the relevance of currently pending state-court litigation—not a prerequisite for abstention, but rather an *additional* reason to abstain—has only increased since suit was filed.  In a state case challenging the General Assembly's mid-decade redistricting authority, the Secretary has asked the court to announce a rule identical to the one requested here: that the Missouri Constitution must be interpreted not to divest the General Assembly of any congressional-redistricting authority absent a "clear statement."  Defendant's Pretrial Brief at 24-25, *Luther v. Hoskins*, No. 25AC-CC06964 (Mo. Cir. Ct. Cole Cnty. Nov. 10, 2025) (Cossette Decl. Ex. A).  Trial concluded in that case on November 12, 2025, and the state court is poised to render a decision.  In this circumstance, abstention is warranted.

## CONCLUSION

The motion to dismiss should be granted or this case should be held in abeyance.

15

Dated:  November 20, 2025                          Respectfully submitted,

                                                  */s/ Jeremy A. Root*

Jessica Ring Amunson (*pro hac vice*)             Jeremy A. Root, MOBAR 59451
Sam Hirsch (*pro hac vice*)                       Charles W. Hatfield, MOBAR 40363
Jonathan J. Marshall (*pro hac vice*)             Alexander C. Barrett, MOBAR 68695
Elizabeth H. Starr (*pro hac vice*)               Alixandra Cossette, MOBAR 68114
**JENNER & BLOCK LLP**                            Greta Bax, MOBAR 73354
1099 New York Ave., Suite 900                     **STINSON LLP**
Washington, DC 20001                              230 West McCarty Street
202-639-600 (phone)                               Jefferson City, MO 65101
202-639-6066 (fax)                                573-636-6263 (phone)
jamunson@jenner.com                               573-636-6231 (fax)
shirsch@jenner.com                                jeremy.root@stinson.com
jmarshall@jenner.com                              chuck.hatfield@stinson.com
estarr@jenner.com                                 alexander.barrett@stinson.com
                                                  alixandra.cossette@stinson.com
                                                  greta.bax@stinson.com

16

**CERTIFICATE OF SERVICE AND COMPLIANCE**

I hereby certify that on this day I electronically filed the foregoing with the Clerk of the Court for the United States District Court for the Eastern District of Missouri, Eastern Division, using the CM/ECF system, which will send a notice of filing to all counsel of record who have consented to service by electronic means.  I further certify that the foregoing document contains 5,393 words and appears on 15 typed pages, exclusive of matters designated for omission.

Dated:  November 20, 2025                    _/s/ Jeremy A. Root_____
                                                                    Jeremy A. Root