# EXHIBIT B



ATTORNEY GENERAL OF MISSOURI

CATHERINE L. HANAWAY

December 10, 2025

Jessica Ring Amunson
1099 New York Ave NW # 900
Washington, D.C. 20001

Charles W. Hatfield
230 West McCarty Street
Jefferson City, MO 65101

Re:    Mr. von Glahn's and Mr. Hatfield's recent statements regarding the House Bill
       1 Referendum Petition

Dear Ms. Amunson and Mr. Hatfield,

I write concerning the statements of your client and Mr. Hatfield that the mere submission of signatures seeking a referendum on HB 1 "suspend[s]" House Bill 1.[1]

In response to the Attorney General's statement that "House Bill 1 and the Missouri FIRST Map will go into effect on Dec. 11 and not be frozen unless and until the Secretary of State certifies the referendum," Mr. Hatfield stated that the State "made up another incorrect reason to try and stop the will of the people on this. But they're wrong."[2] And Mr. Hatfield may have even been more explicit about the legal effects of submitting the referendum petition.[3]

These statements contradict your representations in federal district court on November 25, 2025. As you know, the Missouri Constitution says that "[a]ny measure

---

[1] Rudi Keller & Jason Hancock, *Missouri set to enact gerrymandered map despite 300K signatures for repeal referendum*, Missouri Independent (Dec. 9, 2025), https://missouriindependent.com/2025/12/09/missouri-gerrymander-congressional-map-referendum/.

[2] Jason Rosenbaum, *Missouri redistricting foes may have dealt big blow to Trump-backed congressional map*, St. Louis Public Radio (Dec. 9, 2025), https://www.stlpr.org/government-politics-issues/2025-12-09/missouri-redistricting-foes-may-have-dealt-big-blow-to-trump-backed-congressional-map.

[3] *See id.* ("Hatfield said People Not Politicians agreed that Hoskins had the ability to potentially block the referendum – not that the map wasn't frozen as soon as signatures were turned in.")

1

referred to the people shall take effect" only "when approved by a majority of the votes cast upon, and not otherwise."[4] The State's position in federal court was that a matter could not be deemed "referred to the people" until the Secretary of State certified a submitted referendum petition or a state court ordered the Secretary to certify.[5] But the State noted uncertainty on whether you agreed with that position, and the Court said it was "eager to hear" your position on that question.[6]

Subsequently, Judge Bluestone asked Ms. Amunson whether H.B. 1 would take effect notwithstanding submission of the signatures.[7] In discussing with Ms. Amunson whether the State faced immediate harm from the filing of your client's petition, Judge Bluestone said, "I think necessary to [your] argument as to why the State isn't facing harm . . . implicit in that is that the freeze wouldn't occur on the new maps *until after the certification.* Is that right?"[8] In further sharping his point, Judge Bluestone said that for your client to prevail on ripeness grounds, "the law would go into effect, and then you would seek to challenge the law based on the Secretary's actions."[9] Ms. Amunson stated: "And that is our position, your honor."[10]

Lest there was any doubt on what you represented, during an exchange with counsel for the State, the Court subsequently clarified its understanding of your concession, and that the newly enacted map would stay in effect unless and until the Secretary certifies the referendum or Mr. von Glahn successfully challenges a refusal to certify.

> Mr. Capozzi: I think eventually, my friend conceded, that the map stays in effect unless and until they can win a state court challenge . . . .
> The Court: That's where I think everybody wound up. And Mr. Hatfield is nodding his head yes.[11]

If you disagreed with that understanding of your concession, you were obligated to inform the Court. Instead, you allowed the Court to issue a ruling based on that concession. Indeed, the Court accepted your representations that House Bill 1 would go into effect until your clients' referendum petition was certified by the Secretary of State. Footnote 4 of the opinion says:

---

[4] Mo. Const. art. III, § 52(b).

[5] Tr. 36:9–12, *Missouri General Assembly v. von Glahn*, 4:25-cv-1535 (E.D. Mo. Nov. 25, 2025).

[6] *Id.* at 36:13.

[7] *Id.* at 44:23–45:1

[8] *Id.*

[9] *Id.* at 48:10–12.

[10] *Id.* at 48:20.

[11] *Id.* at 52:14–20.

At the hearing, the State expressed concern that PNP would backslide on its repeated representations to this Court that . . . the new map would go into effect barring a successful challenge to decertification. *See* Tr. at 51–52. *But see, e.g.*, Doc. 22 at 1, 8, 11– 12, 13–14, 34–35, 38; Doc. 32 at 4, 6; Tr. at 43–44, 48–50. While the State cannot be faulted for failing to anticipate these concessions at the outset of the case, *the Court has expressly found that PNP affirmatively waived these points*, *see* Tr. at 52, precluding any argument to the contrary in future litigation (*to say nothing of the ethical ramifications of counsel breaching their duty of candor to this tribunal*).[12]

As you know, lawyers have a duty of candor to courts.[13] They certainly cannot make a representation to a court that helps them win a case and then suddenly turn around and contradict that representation in public.

The State therefore demands that you immediately issue a public statement confirming your concession to the Court that HB 1 is in effect unless and until the Secretary certifies the referendum. The State also demands you send a copy of that statement to all media outlets that you or your client communicated the contrary position to. If you do not do so by 12:00 P.M. on Friday, December 12, the State will ask Judge Bluestone to issue sanctions.

Sincerely,

Louis J. Capozzi III
Solicitor General
Missouri Attorney General's Office
221 West High Street
Jefferson City, MO 65101

---

[12] *Missouri General Assembly v. von Glahn*, No. 4:25-cv-1535, 2025 WL 3514277, at *4 n.4 (E.D. Mo. Dec. 8, 2025) (emphasis added).
[13] *See, e.g.*, Model Rules of Pro. Conduct r. 3.3(a); Mo. Sup. Ct. R. 4-3.3(a).