# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF MISSOURI
# EASTERN DIVISION

MISSOURI GENERAL ASSEMBLY, *et al.*

      *Plaintiffs,*

          v.

RICHARD VON GLAHN, *et al.*

      *Defendants.*

Case No. 4:25-cv-01535-ZMB

## MEMORANDUM IN SUPPORT OF THE STATE OF MISSOURI'S
## <u>MOTION TO ALTER THE JUDGMENT</u>

## INTRODUCTION

The Court dismissed the State's case because of the "critical[]" concessions Defendants made and because the Secretary of State has a "unique self-help remedy." Op. 1, 7. In an alternative holding, the Court dismissed the State's case based on *Pullman* abstention. *See id.* at 9–10. This Court should alter its judgment, pursuant to Rule 59, for three reasons.

*First*, Defendants made two concessions at the hearing in this case: House Bill 1 is not frozen until the Secretary's certification decision and the Secretary will have the right to obtain judicial review under the U.S. Constitution's Elections Clause. *See* Tr. 44:15–20, 48:9–23; *accord* op. at 1. Defendants and their counsel have already backtracked on the first concession. Their misrepresentations to the Court are sufficient reasons to alter this Court's judgment. *See* ECF 41-1. Even ignoring the ethical ramifications of Defendants' counsels' potential lack of candor, Defendants' having backtracked on H.B. 1 going into effect means that the State was and is facing an irreparable injury sufficient to confer standing. *See* Compl. ¶ 48; PI Br. at 11; Pls. PI Reply and MTD Opp. Br. at 16–19.

*Second*, with respect to this Court, the Court's understanding of state law may have been incorrect such that the State has no ability to use its "unique self-help remedy." ECF at 7. State appellate courts have suggested the Secretary cannot reject a proposed referendum on federal constitutional grounds. *See Mo. Elec. Coop. v. Kander*, 497 S.W.3d 905, 920 (Mo. Ct. App. 2016). And although Defendants acknowledge they conceded otherwise, *see* ECF 42 at 10, that is thin comfort to the

State. The State is already facing a lawsuit despite Defendants' concession that H.B. 1 would not be frozen until the Secretary's certification decision. *See* Pet., *Maggard v. State of Missouri*, 25AC-CC09120 (Mo. 19th Cir. Ct. Dec. 23, 2025). That lawsuit— in which Defendants are conspicuously absent despite publicly promising to sue— shows that the State will likely face a lawsuit as soon as the Secretary potentially rejects the referendum, and that Defendants can avoid the consequences of their concession to this Court by absenting themselves. Thus, to the extent this Court believed that Defendants' concessions would protect the State from the imminent injuries it alleged, subsequent events have cast substantial doubt on that point. The Court should thus reconsider whether the State faces imminent and ongoing injuries or, at the very least, hold this case in abeyance to see if the State's feared injuries materialize.

*Third*, the Court's *Pullman* abstention holding is, respectfully, mistaken. What state law means in Elections Clause cases is a *federal* question. *See Moore v. Harper*, 600 U.S. 1, 19–26 (2023). And *Pullman* abstention is not available on questions of federal law. Additionally, abstention is inequitable under the Eighth Circuit's decision in *Beavers*. *See Beavers v. Ark. State Bd. of Dental Exam'rs*, 151 F.3d 838, 841 (8th Cir. 1998). At a minimum, abstention is only available if there is "an adequate state remedy." *Id.* Once again, state appellate authority suggests the state courts might not allow the Secretary to reject the proposed referendum under the federal constitution, and that they would not review that problem until after the vote—by which time the State will have been unable to use its duly-enacted

congressional map for the 2026 elections.  Thus, under *Beavers*, abstention is not permissible in this case.

Therefore, this Court should vacate its dismissal order or, at a minimum, hold the case in abeyance instead of dismissing.  Additionally, the Court should vacate its alternative *Pullman* holding.

<u>BACKGROUND</u>

After Missouri filed this lawsuit seeking preliminary relief and Defendants filed their motion to dismiss, this Court held a hearing on both motions on November 25, 2025.  In that hearing, the Court honed in on one of Plaintiffs' primary alleged harms—that the congressional map enacted in H.B. 1 could be frozen due to Defendants' actions.  Compl. ¶ 48; PI Br. at 11.  That discussion focused on the meaning of the Missouri Constitution, which states that, as part of the referendum process, "[a]ny measure referred to the people shall take effect when approved by a majority of the votes cast thereon, and not otherwise."  Mo. Const. art. III, § 52(b).

When H.B. 1 would become frozen was a large focus of the hearing with the Court pointedly questioning both sides about when the new congressional map would be frozen.  Ultimately, "everybody wound up" agreeing that the map stays in effect unless and until a state court orders the Secretary to certify the referendum.  Tr. 52:15–53:1.  The Court deemed that point "abundantly clear."  Tr. 52:24.

On December 8, the Court issued its ruling dismissing Plaintiffs' claim because their injuries were not ripe for adjudication, *see* op. at 5–8, and alternatively that *Pullman* abstention warrants dismissal, *see id.* at 9–11.  The Court's analysis relied

4

on Defendants' "critical[]" concessions that the State did not imminently face the harm of having its duly enacted law frozen. *Id.* at 1.

On December 9, Defendants submitted their referendum to the Secretary of State. Defendants and Defendants' counsel immediately began declaring that H.B. 1 was "suspended" until after Missourians voted to approve or reject it.[1] The ethical ramifications of Defendants' counsel potentially breaching their duty of candor to this Court is subject to another motion. *See* ECF 41.

On December 23, two Missourians filed a petition in Missouri state court seeking declaratory and injunctive relief against the State of Missouri and Secretary Hoskins based on Defendants' referendum petition. *See* Pet., *Maggard v. State of Missouri*, 25AC-CC09120 (Mo. 19th Cir. Ct. Dec. 23, 2025). Their one count alleges that Secretary Hoskins incorrectly put H.B. 1 into effect because Defendants have submitted their referendum petition. *See id.* ¶¶ 31–37. Petitioners seek a declaration that "HB1 is suspended until voters approve or reject it" and an injunction "prohibiting the use of HB1's new congressional map before voters approve or reject

---

[1] Rudi Keller & Jason Hancock, *Missouri Set to Enact Gerrymandered Map Despite 300K Signatures for Repeal Referendum*, Missouri Independent (Dec. 9, 2025), https://missouriindependent.com/2025/12/09/missouri-gerrymander-congressional-map-referendum/; *see also* Alisa Nelson, *When Does Missouri's New Congressional Map Take Effect? That Depends on Who You Ask*, Missourinet (Dec. 10, 2025), https://www.missourinet.com/2025/12/10/when-does-missouris-new-congressional-map-take-effect-that-depends-on-who-you-ask/ (quoting People Not Politicians press release).

it." *Id.* ¶¶ 43–44.  Despite Defendants' public promises to file that same lawsuit,[2] they are conspicuously (and at least nominally) absent from the *Maggard* case.

<u>ARGUMENT</u>

The Court should alter its judgment.  This Court has broad discretion to grant a Rule 59(e) motion, including "the need to correct a clear error or prevent manifest injustice."  *Firestone v. Firestone*, 76 F.3d 1205, 1208 (D.C. Cir. 1996) (citation omitted).

## I.  Defendants backtracking on their concessions show that Plaintiffs have standing.  The Court should vacate its opinion.

Defendants' Counsel made *two* concessions at the hearing in this case: (1) that H.B. 1 is not frozen until the Secretary's certification decision and (2) that the Secretary will have the right to obtain judicial review under the U.S. Constitution's Elections Clause.  *See* Tr. 44:15–20, 48:9–23; *accord* op. at 1.  In the Court's words, these concessions were "critical[]" in its determination that this case was not ripe for adjudication.  Op. at 1.

---

[2] *See* Press Release, *People Not Politicians* (Dec. 9, 2025), https://peoplenotpoliticiansmo.org/missouri-voters-mobilize-in-defense-of-core-democratic-rights-with-historic-referendum-submission-halting-missouris-super-gerrymander/ ("If the Secretary of State refuses to certify the referendum or attempts to put HB1 into effect prematurely, People Not Politicians is prepared to take immediate action in state court."); Jason Rosenbaum, *Missouri redistricting foes may have dealt a big blow to Trump-backed congressional map*, St. Louis Public Radio (Dec. 9, 2025), https://www.krcu.org/news/2025-12-09/missouri-redistricting-foes-may-have-dealt-big-blow-to-trump-backed-congressional-map ("Hatfield agreed that if a court finds that Hoskins and Hanaway are wrong that the map wasn't frozen as soon as People Not Politicians turned in their signatures, then there's no way for the map to go into effect during the 2026 election cycle.  'If it turns out that they're going to make us go to court on every single step of this process, I guess that's what we'll do,' he said.").

As highlighted in Plaintiffs' suggestions and reply in support of their motion for sanctions, Defendants (and Defendants' counsel) have backtracked on their concessions made to this Court. *See* ECF 41-1 at 3–8; ECF 43 at 2–3. After this Court's ruling, Defendants have unequivocally stated their new—or rather honest—position that H.B. 1 "must be paused until Missourians vote on it."[3] If, as Defendants and their counsel now claim, submitting their referendum is sufficient to suspend H.B. 1, then their "critical[]" concession to this Court is meaningless. Op. at 1. As Plaintiffs explained and argued in their motion for sanctions, that is enough for this Court to set aside its previous judgment. *See* ECF 41-1 at 11; *see also Hazel-Atlas Glass Co. v. Hartford-Empire Co.*, 322 U.S. 238, 245 (1944) (setting aside fraudulently begotten judgment based on Defendant's misrepresentations).

Regardless of the possible ethical ramifications for Defendants' counsel, Defendants backtracking on their concessions reinforces the reality that the State has standing in this case. *See* Compl. ¶ 48; PI Br. 10–11. If Defendants' mere submission of their referendum—without counting signatures, much less verifying their legitimacy—suspended H.B. 1, then the State would be "barr[ed] . . . from conducting this year's elections pursuant to a statute enacted by the Legislature . . .

---

[3] Alisa Nelson, *When Does Missouri's New Congressional Map Take Effect? That Depends on Who You Ask*, Missourinet (Dec. 10, 2025), https://www.missourinet.com/2025/12/10/when-does-missouris-new-congressional-map-take-effect-that-depends-on-who-you-ask/ (quoting People Not Politicians press release); Jason Rosenbaum, *Missouri Redistricting Foes May Have Dealt Big Blow to Trump-Backed Congressional Map*, St. Louis Public Radio (Dec. 9, 2025), https://www.stlpr.org/government-politics-issues/2025-12-09/missouri-redistricting-foes-may-have-dealt-big-blow-to-trump-backed-congressional-map.

[T]his would seriously and irreparably harm the State." *Abbott v. Perez*, 585 U.S. 579, 602 (2018).  Therefore, to prevent manifest injustice of relying on Defendants' spurious concessions seemingly suggesting that the Secretary and Plaintiffs could obviate this "serious[] and irreparabl[e] harm," this Court should reconsider whether the State has standing and alter its judgment accordingly.

## II.    Regardless of Defendants' concessions, the Court's understanding that the State could forestall harm through rejecting the referendum petition is dubious.  So the Court should hold this case in abeyance.

Regardless of Defendants' concessions, in denying Plaintiffs standing, this Court understood Missouri law to (1) require displacement of H.B. 1 only "[i]f the Secretary finds the petition satisfies both" compliance with the Missouri Constitution and the signature requirements, op. at 2 (citing Mo. Rev. Stat. § 116.150), and (2) allow the Secretary to reject the referendum on federal constitutional grounds, op at 8.  The State has already been sued on the first question.  *See* Pet., *Maggard v. State of Missouri*, 25AC-CC09120 (Mo. 19th Cir. Ct. Dec. 23, 2025).  And with all due respect to this Court, the second point is dubious as a matter of state law.

Despite the Court holding that Secretary Hoskins has the "unique self-help remedy" through his "power to declare the petition unconstitutional," op. at 7, Missouri law seemingly suggests the Secretary cannot reject a referendum under the U.S. Constitution, *see Calzone v. Ashcroft*, 559 S.W.3d 32, 37 (Mo. Ct. App. 2018).  As the Western District Court of Appeals explained in *Missouri Electric Cooperatives v. Kander*, the legal "sufficiency determination the Secretary of State is required to conduct plainly does not include whether an initiative petition complies with the

*Federal* Constitution" 497 S.W.3d at 920 (emphasis in original).  With respect to the Court, it may have been wrong on this point central to its holding.  If the Secretary declares the referendum petition to violate the Elections Clause, the State will face an immediate lawsuit in courts that will be bound by cases like *Missouri Electric Cooperatives.*

Moreover, the State is skeptical that Defendants' contrary concession will do it any good.  Defendants have already renounced their concession that H.B. 1 is not immediately frozen by the mere submission of signatures.[4]  And after they encouraged litigation against the State on that question, random voters with an elite legal team suddenly appeared and sought the very relief that Plaintiffs alleged would inflict irreparable harm on the State—a suspension of the General Assembly's enacted congressional districts.  *See* Compl. ¶ 48.  Given the fact that this Court suggested Defendants would be estopped from bringing such a suit, op. at 7 n.4, it is hard not to wonder whether Defendants are absent from that litigation precisely to avoid that consequence.

*Maggard* reinforces that Defendants' concessions on the Secretary's ability to prevent the State's alleged harms in this case offer little protection.  Independent third parties are not bound by whatever concessions Defendants made or this Court's judgment.  *See Feinstein v. Edward Livingston & Sons, Inc.*, 457 S.W.2d 789, 794 (Mo. banc 1970).[5]  And the fact that *Maggard* was filed without Defendants being the

---

[4] *See* Keller, *supra* note 1; Nelson, *supra* note 1.
[5] The State is not conceding that Defendants played no role in the filing of the *Maggard* case.

initiating parties suggests that nothing will stop third parties from arguing that (1) the Secretary cannot reject proposed referenda on substantive constitutional grounds and that (2) state court judicial review is not available until after the final vote.

At a minimum, recent events should make the Court question whether Defendants' concessions will actually help prevent the State from harm. Under these circumstances, it is—at a minimum—appropriate for the Court to hold this case in abeyance to see if Defendants' concessions will hold up.[6]

### III. The Court's alternative *Pullman* holding is erroneous and should be vacated.

Even if the Court thinks subsequent events have not undermined its standing ruling, the State respectfully requests that this Court vacate its *Pullman* holding.

*First*, Plaintiffs' lawsuit raises a pure federal question, making *Pullman* abstention categorically unavailable. What state law means in Elections Clause cases is a *federal* question. *See Moore*, 600 U.S. at 19–26 ("The question on the merits is whether the Elections Clause insulates state legislatures from review by state courts for compliance with state law."); *see also id.* at 34 ("As in other areas where the exercise of federal authority or the vindication of federal rights implicates questions of state law, we have an obligation to ensure that state court interpretations of that law do not evade federal law."); *Bush v. Gore*, 531 U.S. 98, 113

---

[6] Plaintiffs sought declaratory relief, *see* Compl. ¶ 70, Prayer for Relief 1–2, which prevents this case from being moot, *see Thomas v. Bennett*, 856 F.2d 1165, 1168 (8th Cir. 1988). Additionally, Plaintiffs should be permitted to file a new motion for a preliminary injunction or an amended complaint if Defendants' concessions do not hold up.

10

(2000) (Rehnquist, C.J., concurring) ("A significant departure from the legislative scheme for appointing Presidential electors presents a federal constitutional question."). *Pullman* abstention is thus categorically impermissible—because federal courts cannot abstain on questions of federal law. *See Hunter v. Page Cnty.*, 102 F.4th 853, 873 (8th Cir. 2024).

Additionally, nearly all of the merits briefing in this case is about whether the Elections Clause requires a clear statement rule before allowing a referendum. *See* PI Br. at 3–10; Defs. MTD and PI Opp. Br. at 19–25; Pls. PI Reply and MTD Opp. Br. at 3–12; Defs MTD Reply Br. at 10–14. The parties spend almost *zero* space debating state-law rules. The answer to this case thus does not "depend[] on state courts' construction of an ambiguous state law" making *Pullman* abstention inappropriate. *Hunter*, 102 F.4th at 873.

*Second*, under the Eighth Circuit's five-factor *Beavers* test, abstaining under *Pullman* is inappropriate. *See Beavers*, 151 F.3d at 841. The second factor is whether state remedies are "available." *Id.* at 841. Again, the Court relied on Secretary Hoskins's ability to reject the referendum petition on Elections Clause grounds in its ruling. Op. at 10. "[T]he only pertinent inquiry is whether the state proceedings afford an adequate opportunity to raise the constitutional claims." *Moore v. Sims*, 442 U.S. 415, 430 (1979). As explained above, they may not. The Secretary may not be able to reject a referendum on redistricting based on federal-constitutional grounds. *See Mo. Elec. Coops.*, 497 S.W.3d at 920. And again, Defendants' concessions only apply to them; other litigants are free (and likely) to bring a state

court challenge if the Secretary were to do so. Defendants' opportunistic backtracking on their freezing concession, and the filing of the *Maggard* case, reinforces the legitimacy of that concern.

Therefore the Court should vacate its alternative *Pullman* holding.

## CONCLUSION

For the foregoing reasons, the Court should grant Missouri's motion to alter its judgment pursuant to Rule 59(e).

Dated: January 5, 2026               Respectfully submitted,

**CATHERINE L. HANAWAY**
ATTORNEY GENERAL

/s/ *Louis J. Capozzi III*
Louis J. Capozzi III, #77756(MO)
  *Solicitor General*
William James Seidleck, #77794(MO)
  *Principal Deputy Solicitor General*
Graham Miller, #77656(MO)
  *Deputy Solicitor General*
OFFICE OF THE ATTORNEY GENERAL
Old Post Office Building
815 Olive Street, Suite 200
St. Louis, MO 63101
Phone: (573) 645-9662
Louis.Capozzi@ago.mo.gov
William.Seidleck@ago.mo.gov
Graham.Miller@ago.mo.gov

*Counsel for Plaintiffs*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on January 5, 2026 the foregoing was filed electronically through the Court's electronic filing system to be served electronically on counsel for all parties.

/s/ *Louis J. Capozzi III*
_____
