# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MISSOURI
### EASTERN DIVISION

MISSOURI GENERAL ASSEMBLY, *et al.*

     *Plaintiffs,*

        v.

RICHARD VON GLAHN, *et al.*

     *Defendants.*

Case No. 4:25-cv-01535-ZMB

## REPLY IN SUPPORT OF THE STATE OF MISSOURI'S
## <u>MOTION TO ALTER THE JUDGMENT</u>

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ............................................................................... 3

INTRODUCTION ............................................................................................... 5

ARGUMENT ....................................................................................................... 8

    I.    This motion is not a relitigation of the merits ............................... 8

    II.    Defendants can backtrack but they cannot escape the ongoing
          injury to the State through their actions ........................................ 8

    III.    It remains uncertain whether the State will be able to forestall
          harm through rejecting the referendum petition ....................... 11

    IV.    The Court can still prevent further harm .................................... 14

    V.    The Court's alternative *Pullman* holding is erroneous and
          should be vacated ............................................................................. 14

CONCLUSION ................................................................................................. 16

CERTIFICATE OF SERVICE ......................................................................... 18

<u>T</u>ABLE OF <u>A</u>UTHORITIES

## Cases

*Abbott v. Perez,*
    585 U.S. 579 (2018) ............................................................................... 9

*Azar v. Garza,*
    584 U.S. 726 (2018) ............................................................................... 7

*Beavers v. Ark. State Bd. of Dental Exam'rs,*
    151 F.3d 838 (8th Cir. 1998) ............................................................... 15

*Calzone v. Ashcroft,*
    559 S.W.3d 32 (Mo. Ct. App. 2018) ................................................ 7, 12

*FEC v. Cruz,*
    596 U.S. 289 (2022) ............................................................................. 14

*Gulf Offshore Co. v. Mobil Oil Corp.,*
    453 U.S. 473 (1981) ............................................................................. 15

*Knick v. Township of Scott,*
    588 U.S. 180 (2019) .................................................................. 11, 14, 15

*Kuehl v. Sellner,*
    887 F.3d 845 (8th Cir. 2018) ............................................................... 10

*Missouri Electric Cooperatives v. Kander,*
    497 S.W.3d 905 (Mo. Ct. App. 2016) ............................................ 7, 9, 13

*Nat'l Family Plan. & Reprod. Health Ass'n v. Gonzales,*
    468 F.3d 826 (D.C. Cir. 2006) ............................................................. 10

*R.R. Comm'n of Tex. v. Pullman Co.,*
    312 U.S. 496 (1941) .................................................................. 7, 15, 16

*Yeransian v. B. Riley FBR, Inc.,*
    984 F.3d 633 (8th Cir. 2021) .............................................................. 6, 8

*Zimmerman v. City of Austin,*
    881 F.3d 378 (5th Cir. 2018) ............................................................... 10

## Statutes

Mo. Rev. Stat. § 116.120.1 ........................................................................... 10

Mo. Rev. Stat. § 116.150 ................................................................................................. 9

Mo. Rev. Stat. § 116.200.1 ............................................................................................ 12

## INTRODUCTION

It's an obvious pattern by this point:  Defendants blow smoke in an effort to keep this Court from seeing the clear injury the State faces from their concerted effort to undermine a duly enacted redistricting measure.  But the facts are "abundantly clear"—Defendants made a concession to this Court that H.B. 1 would remain in effect unless and until the Secretary of State certified their referendum petition.  Tr. 52:15–53:1.  This Court relied on that "critical[]" concession to conclude that the State did not face an imminent injury.  Op. at 1.  Then, once this Court's decision was in hand, Defendants proclaimed the opposite—publicly promising the State would be immediately sued to freeze H.B. 1.[1]  That has now happened—precisely as Defendants promised—with two random voters backed by a powerful, national law firm suddenly appearing to inflict more injuries on the State.  *See Maggard v. State of Missouri*, 25AC-CC09120 (Mo. 19th Cir. Ct. Dec. 23, 2025).

---

[1] *See* Press Release, *People Not Politicians* (Dec. 9, 2025), https://peoplenotpoliticiansmo.org/missouri-voters-mobilize-in-defense-of-core-democratic-rights-with-historic-referendum-submission-halting-missouris-super-gerrymander/ ("If the Secretary of State refuses to certify the referendum or attempts to put HB1 into effect prematurely, People Not Politicians is prepared to take immediate action in state court."); Jason Rosenbaum, *Missouri redistricting foes may have dealt a big blow to Trump-backed congressional map*, St. Louis Public Radio (Dec. 9, 2025), https://www.krcu.org/news/2025-12-09/missouri-redistricting-foes-may-have-dealt-big-blow-to-trump-backed-congressional-map ("Hatfield agreed that if a court finds that Hoskins and Hanaway are wrong that the map wasn't frozen as soon as People Not Politicians turned in their signatures, then there's no way for the map to go into effect during the 2026 election cycle.  'If it turns out that they're going to make us go to court on every single step of this process, I guess that's what we'll do,' he said.").

The circumstances of this case are unusual—but they present the Court with the rare situation warranting reconsideration. Defendants should not reap a windfall for their breach of candor. In addition to Defendants' ethical lapse, *see* Sanctions Mot., three specific manifest errors present themselves warranting altering or amending this Court's judgment. And nothing Defendants posit countenances otherwise.

*First*, an error in standing is a manifest error. *See Yeransian v. B. Riley FBR, Inc.*, 984 F.3d 633, 636 (8th Cir. 2021). The State is suffering injury through Defendants' submission of their referendum petition and their breach of candor. Defendants attempt to escape this reality by asserting that the State has chosen to conduct signature verification and is thus injuring itself. *See* Rule 59 Opp. at 7–9. But they ignore how this injury is clearly traceable to the submission of Defendants' petition—made possible only after they agreed with this Court that the law would take effect. *See* Tr. 48:9–23. Thus, the injury is not self-inflicted but directly attributable to Defendants' actions (and their backtracked concession).

*Second*, Defendants suggest that state-court challenges over certification remain speculative and that the State can assert its claims in potential future court proceedings. *See* Rule 59 Opp. at 10–11. Both of these assertions ring hollow. The State has been sued at every step of Defendants' referendum effort—by Defendants in two instances and a third possibly orchestrated by Defendants. It is basically certain the State will be challenged at the certification stage of the referendum petition. *See* Tr. 44:11. As for Defendants' second assertion, this is directly contrary

6

to what Defendants argued at the hearing, before making the necessary concessions to the Court to win their case. *See* Tr. 43:20–24. Given Defendants' behavior, the State is justifiably hesitant to rely on Defendants' insistence that the State's federal-legal claims can be heard in state court before the referendum vote occurs. *See Missouri Electric Cooperatives v. Kander*, 497 S.W.3d 905, 920 (Mo. Ct. App. 2016) ("The sufficiency determination the Secretary of State is required to conduct plainly does not include whether an initiative petition complies with the ***Federal*** Constitution." (emphasis in original)).

*Third*, this is not the textbook case of *Pullman* abstention. *See* Rule 59 Opp. at 11–12. In *Pullman* itself, the Supreme Court abstained only after there were "obvious methods" to bring the constitutional claim in state proceedings. *R.R. Comm'n of Tex. v. Pullman Co.*, 312 U.S. 496, 501 (1941). But state law sharply limits pre-election challenges to referendums "to claims that the procedures for submitting a proposal to the voters were not followed." *Calzone v. Ashcroft*, 559 S.W.3d 32, 37 (Mo. Ct. App. 2018). Thus, it is far from obvious that the State has a method to have its Elections Clause claim heard in state court. And more fundamentally, this case turns entirely on a question of federal constitutional law. The Elections Clause problem does not turn on any antecedent state-law questions. Abstention is therefore inappropriate.

At bottom, the Court should not allow Defendants' deception to go unpunished. In our system, "it is critical that lawyers and courts alike be able to rely on one another's representations." *Azar v. Garza*, 584 U.S. 726, 730 (2018) (per curiam).

Given Defendants' actions, the Court should vacate its dismissal order and reopen merits proceedings.  Alternatively, at a minimum, the Court should hold the case in abeyance instead of dismissing.  Additionally, the Court should vacate its alternative *Pullman* holding.

**ARGUMENT**

## I.    This motion is not a relitigation of the merits.

Defendants posit (at 1) that the State is trying to relitigate matters that could have been raised before judgment.  That (unsurprisingly at this point) misrepresents the State's motion.  The State brought this motion *solely* because of Defendants' unforeseen post-judgment actions.  True, both the State and this Court knew that Defendants intended to file their referendum petition with signatures.  *See* Rule 59 Opp. at 8.  But the State certainly did not expect counsel for the Defendants to breach their duty of candor to this Court and publicly encourage third parties to inflict upon the State the very harm that the State feared—and that this Court found would not occur given Defendants' concession.  *See* Op. at 7 n.4.  To the extent that the State addresses points of Missouri law, those only illustrate the harm from Defendants' post-judgment breaches.

## II.    Defendants can backtrack but they cannot escape the ongoing injury to the State through their actions.

An incorrect standing ruling is a manifest error in law.  *See Yeransian*, 984 F.3d at 636 (reviewing standing raised in a Rule 59(e) motion *de novo*).  The error becomes even more manifest when the Court considers that its standing analysis was premised on Defendants' now-disavowed concession—that H.B. 1 will, in this Court's

8

words, be "displaced" only "[i]f the Secretary finds the petition satisfies both" compliance with the Missouri Constitution and the signature requirements. Op. at 2 (citing Mo. Rev. Stat. § 116.150).

Defendants continue to re-characterize their first concession as "what would happen . . . *after* the Secretary issued a certificate of insufficiency." Rule 59 Opp. at 9 (emphasis in original). Defendants insist that they have "consistently maintained . . . H.B. 1 was suspended as soon as PNP submitted a prima facie number of valid signatures." *Id.* at 7. The Court need look no farther than its exchange with Defendants' counsel to see how their position has been anything but consistent. *See* Tr. 44:2–48:23; *see also* Sanctions Br. at 4–6 (walking through this exchange).

Despite insisting on their consistency, Defendants nowhere contend that H.B. 1's suspension inflicts no injury on the State. Nor could they. *See Abbott v. Perez*, 585 U.S. 579, 602 (2018). Instead, Defendants shift to arguing that the State has inflicted injury on itself because the State has taken the constitutionally prudent route of verifying signatures prior to making a constitutional judgment about the referendum's compliance with the Elections Clause. Courts avoid these constitutional questions where possible, and there is no reason why a co-equal branch of government should be rushed into making its own constitutional interpretation— especially where it is uncertain under state law whether the Secretary *can* reject the referendum under the federal Constitution. *See Kander*, 497 S.W.3d at 920.

9

This sensible approach does not mean that the State has inflicted injury on itself—especially when this Court recognized that H.B. 1 would freeze only after the Secretary completed this process and certified the referendum. *See* Op. at 2. Defendants suggest (at 8–9) that this injury was due to the Secretary's own choice. But this choice is not of the State's "own making." *Nat'l Family Plan. & Reprod. Health Ass'n v. Gonzales*, 468 F.3d 826, 831 (D.C. Cir. 2006); *see also Zimmerman v. City of Austin*, 881 F.3d 378, 389 (5th Cir. 2018) ("[Plaintiff] did not take steps towards . . . demonstrate[ing] a serious intent to violate the statute."). Rather, this choice was thrust upon the Secretary when the Defendants submitted their referendum petition on December 9, 2025 *and* withdrew their concession that H.B. 1 would take effect—the cornerstone of this Court's decision. *See* Op. 2, 7 & n.4; Tr. 52:13–25. Thus, this injury is not from the State's choice but "instead stems" from Defendants' actions. *See Kuehl v. Sellner*, 887 F.3d 845, 851 (8th Cir. 2018) (tracing injury to defendants' actions even though plaintiffs came to the injury).

Moreover, a self-inflicted injury fails to impart standing largely when the harm "would not be fairly traceable to the defendant's challenged conduct." *Nat'l Family Plan.*, 468 F.3d at 831; *see also Zimmerman*, 881 F.3d at 390 (harm "depends in large part on actions of third-part[ies]"). But here, the harm is directly traceable to Defendants' submission of their referendum, *see* Mo. Rev. Stat. § 116.120.1 (directing Secretary's actions "[w]hen a[] . . . referendum petition is submitted"), and their post-judgment insistence (at 7) that Secretary must rashly find the petition insufficient solely on federal-constitutional grounds.

That latter position presents its own problems.  On Defendants' telling (at 8), the Secretary can simply issue a denial on federal-constitutional grounds.  But forcing the Secretary to rashly decline certification—without building a more broadly defensible record—is itself a harm.  Nothing supports the proposition that a party must prejudice itself in future litigation by invoking a state-law procedure that will adversely affect its federal right.  *See Knick v. Township of Scott*, 588 U.S. 180, 188–89 (2019) (rejecting the argument that federal-constitutional claims must first go through state-court review and trigger potential preclusion traps).

For all their bluster, Defendants cannot escape the practical reality that they are forcing the very injury that State sought to stop.  The State and the Court thought that no harm would befall the State given Defendants' concessions.  Op. 2, 7 & n.4; Tr. 52:13–25.  Therefore, the State has standing, and the Court should alter its judgment to correct this manifest error of law.

## III.   It remains uncertain whether the State will be able to forestall harm through rejecting the referendum petition.

Regarding Defendants' second concession (that the Secretary will have the opportunity to reject the referendum on federal constitutional grounds, Op. at 8), this point remains uncertain.  Defendants implicitly acknowledge that they would be estopped from arguing otherwise in state court, but their suggestion that it is "entirely speculative" whether the State would be sued by a third party over rejection of the petition now rings hollow.  *See* Rule 59 Opp. at 9.  As detailed in the State's motion to alter the judgment, it did not take long for a third party to sue the State over whether the map is in effect.  *See* Rule 59 Br. at 8.  Given that the State has

11

been sued at *every* stage of this referendum petition, it is nearly a foregone conclusion that a suit over a potential refusal to certify will be forthcoming.  *See People Not Politicians v. Hoskins*, No. 25AC-CC07128 (Mo. 19th Cir. Ct. Sept. 18, 2025) (challenging rejection of the initial sample sheet); *People Not Politicians v. Hoskins*, No. 25AC-CC08724 (Mo. 19th Cir. Ct. Nov. 20, 2025) (challenging ballot summary); *Maggard v. State of Missouri*, 25AC-CC09120 (Mo. 19th Cir. Ct. Dec. 23, 2025) (arguing legislative map must be immediately frozen before certification process begins).  At the very least, the Court should hold this case in abeyance to see if (or when) this state-court challenge materializes.  *See* Mo. Rev. Stat. § 116.200.1 ("any citizen may" bring suit challenging Secretary's certification decision "within ten days" after certification).

Moreover, despite this Court's reasoning that "the State's claims relate to 'constitutional requirements and limits of power' as to whether the referendum can even occur," it remains uncertain whether the Secretary *can* reject the referendum petition on federal or state constitutional grounds raised in this complaint.  Op. at 8.  Regarding the state constitutional challenge, although the State considers its Article III, Section 45 challenge, *see* Compl. ¶¶ 72–74, to be related to the procedure and form of the referendum, a state court may disagree.  *See Calzone*, 559 S.W.3d at 37 (rejecting constitutional challenge because "the limitations are not contained in article III, section 52(a) or any other constitutional or statutory provisions relating to the procedure and form of referendums").  In full candor, the State is aware of no state-court cases permitting a pre-election constitutional review of an initiative or

12

referendum petition outside of Article III, Sections 50 (initiatives) and 52(a) (referenda). Again, this counsels the Court holding this case in abeyance.

Turning to the federal constitutional challenge, the State has the same concerns as with the state constitutional challenge about whether the State will be able to raise its Elections Clause theory in state court. That the Elections Clause claim is a federal constitutional claim exacerbates this uncertainty. *See Kander*, 497 S.W.3d at 920. Defendants' suggestion that *Kander* is inapposite because it was a substantive challenge and did not relate to the procedure and form of a referendum rings hollow. *See* Rule 59 Opp. at 10–11. The *Kander* court emphasized that the challenge was under "the ***Federal*** Constitution." 497 S.W.3d at 920 (emphasis in original). The bold and italicized "federal" at least suggests that a federal challenge will be met with great skepticism. Tellingly, before being pushed by the Court and changing her position, Defendants' counsel took precisely that position: "The Secretary has the ability to review the constitutionality of it for compliance with [the] *Missouri* Constitution." Tr. 43:20–24 (emphasis added).

Moreover, this Court's opinion acknowledged the uncertainty of whether the State could bring either of these challenges in state court. As this Court said, "a state court *likely could* hear th[is] case." Op. at 8 (emphasis added). As explained, there is uncertainty about this point, and state courts are not bound by this Court's classification that these challenges are procedural. If the State cannot be heard in state court on its claims, then the Secretary's "unique self-help remedy" does not exist. *Id.* at 7. Therefore, the State would lack any ability to forestall any injury, so

13

this Court should hold the case in abeyance to allow these all-but-certain state court proceedings to play out—while still maintaining a forum for this uniquely federal suit. *See Knick*, 588 U.S. at 189.

## IV.     The Court can still prevent further harm.

As if to concede their deception, Defendants assert (at 8–9) that this Court can do nothing to remedy the harm faced by the State. The Court should not give Defendants' arguments a second thought. First, Defendants assert (at 8) that the Secretary lacks standing if H.B. 1 is in effect. It would be incredible to accept the position that a plaintiff loses standing whenever she asserts that she is right on a contested point of law. *See FEC v. Cruz*, 596 U.S. 289, 298 (2022) ("For standing purposes, we accept as valid the merits of [plaintiffs'] legal claims . . . .").

Next, Defendants say (at 9–10) that the horse is out of the barn given suits by third parties. True, but that does not foreclose potential remedies for the State. As discussed, nothing prevents the Court from finding standing and reaching the merits of the State's claims. If the Court granted the declaratory relief requested in the State's complaint, *see* Compl. ¶ 70, Prayer for Relief 1–2, the Secretary could stop processing the referendum and Plaintiffs would be protected from further harms.

## V.     The Court's alternative *Pullman* holding is erroneous and should be vacated.

This is not the "textbook case" for *Pullman* abstention. Rule 59 Opp. at 12. Yes, a state court decision that a referendum petition on congressional redistricting is impermissible under Missouri law would resolve this dispute. *See id.* But the state

14

would be deciding a *federal* legal question—one that is categorically ineligible for *Pullman* abstention. *See* Rule 59 Br. at 10–11 (collecting cases).

In any event, abstaining under *Pullman* is inappropriate when "securing a definitive ruling in the state courts cannot be pursued with full protection of the constitutional claim." *Pullman*, 312 U.S. at 501. As discussed above, there is no "obvious method[]" for the State to obtain a review of its constitutional claim in state proceedings. *Id.* The State also raised this point in its briefing, *see* Pls. PI Reply and MTD Opp. at 30, and more fulsomely at argument, *see* Tr. 6:24–7:14, 25:24–26:1.

Tellingly, Defendants do not push back against the claim that state remedies are unavailable and merely argue the Court already decided this issue. *See* Rule 59 Opp. at 12–13. However, as explained above and in the State's Rule 59 Brief (at 8–10), with respect, there is great uncertainty with the Court's decision. Rather Defendants attempt (at 12) to pull another bait-and-switch, saying that the State "could always have litigated these precise claims in state court." Although state courts can obviously hear federal legal claims, *see Gulf Offshore Co. v. Mobil Oil Corp.*, 453 U.S. 473, 477–78 (1981), no authority suggests a litigant *must* take a federal-legal claim to state court before having its federal rights adjudicated in federal court, *cf. Knick*, 588 U.S. at 202 ("[P]ursuit of a remedy in federal court need not await any subsequent state action."). And as discussed, there is considerable doubt whether the State *can* get a final merits ruling on its federal claim in state court before its duly-enacted congressional map is frozen. *See Beavers v. Ark. State*

*Bd. of Dental Exam'rs*, 151 F.3d 838, 841 (8th Cir. 1998) (abstention not appropriate in that situation).

Even if the Court continues to believe that application of *Pullman* is warranted, the proper course of action is to hold this case in abeyance, not dismiss. *Pullman* abstention does not mandate dismissal—rather, "the federal court may give whatever interim relief is appropriate to protect the party during the period of abstention."  17A Wright & Miller, Federal Practice and Procedure § 4243 (3d ed. 2025).  Therefore, the Court should at minimum vacate its alternative *Pullman* dismissal and hold this case in abeyance.

## CONCLUSION

For the foregoing reasons, the Court should grant Missouri's motion to alter its judgment pursuant to Rule 59(e).

Dated: January 21, 2026                    Respectfully submitted,

                                           **CATHERINE L. HANAWAY**
                                           ATTORNEY GENERAL

                                           /s/ *Louis J. Capozzi III*
                                           Louis J. Capozzi III, #77756(MO)
                                             *Solicitor General*
                                           William James Seidleck, #77794(MO)
                                             *Principal Deputy Solicitor General*
                                           Graham Miller, #77656(MO)
                                             *Deputy Solicitor General*
                                           OFFICE OF THE ATTORNEY GENERAL
                                           Old Post Office Building
                                           815 Olive Street, Suite 200
                                           St. Louis, MO 63101
                                           Phone: (573) 645-9662
                                           Louis.Capozzi@ago.mo.gov
                                           William.Seidleck@ago.mo.gov
                                           Graham.Miller@ago.mo.gov

                                           *Counsel for Plaintiffs*

## CERTIFICATE OF SERVICE

I hereby certify that on January 21, 2026 the foregoing was filed electronically through the Court's electronic filing system to be served electronically on counsel for all parties.

/s/ *Louis J. Capozzi III*