UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

MISSOURI GENERAL ASSEMBLY, et al.,    )
                                       )
        Plaintiffs,                    )
                                       )
v.                                     )    Case No. 4:25-CV-1535-ZMB
                                       )
RICHARD VON GLAHN & PEOPLE NOT         )
POLITICIANS,                           )
                                       )
        Defendants.                    )

**MEMORANDUM AND ORDER**

This matter is before the Court on Plaintiffs' Motion for Sanctions against Defendants' Counsel, Doc. 41, and Motion to Alter the Judgment, Doc. 46. Plaintiffs ("the State") claim that counsel for Defendants ("PNP") breached their duty of candor to this Court. Doc. 41. As a sanction, the State asks the Court to admonish counsel, vacate its dismissal order, reopen the case, and strike PNP's motion to dismiss. *Id.* at 1. The State also argues that, in dismissing this case, the Court misapplied both state law and *Pullman* abstention doctrine. Doc. 47 at 2–3. While the relevant public statements were ill advised, the Court finds that there is not clear-and-convincing evidence of attorney misconduct and that there is no basis for altering its judgment. Accordingly, the Court denies both motions.

**BACKGROUND**

The State brought this action for declaratory and injunctive relief to prevent PNP from submitting a referendum petition to reject a recently enacted congressional-redistricting bill. Docs. 1– 2. PNP promptly moved to dismiss and also opposed the State's motion for preliminary injunction. Docs. 21–22. After thorough briefing, the Court held a hearing on both motions. Doc. 38 ("Tr.").

During the hearing, the Court posed a series of questions to PNP's counsel about when the new map would go into effect. Tr. at 44–45. First, the Court asked Attorney Jessica Amunson whether the new map "would go into effect" if the Secretary "declines to certify the petition." *Id.* at 47–48. Ms. Amunson agreed it would. *Id.* Later, the Court highlighted Attorney Charles Hatfield's endorsement of the State's position that the "map would stay in effect unless and until [PNP could] win a state court challenge" to a certification of insufficiency.[1] *Id.* at 52. Shortly after the hearing, the Court issued an opinion granting PNP's Motion to Dismiss on ripeness grounds. Doc. 39. Significant to that decision was PNP's concession that the Secretary had the authority "to reject their petition as unconstitutional during post-submission review" and that "this determination would obviate the need for signature verification, publication, or a vote, and it also would prevent the displacement of the new map." *Id.* at 1.

In the wake of the Court's opinion, PNP and Mr. Hatfield made statements to the press suggesting that the mere submission of signatures would freeze the new map, while acknowledging that the issuance of a certificate of insufficiency would give immediate effect to the new law, subject to any court challenge. *See, e.g.*, Rudi Keller & Jason Hancock, *Missouri Set to Enact Gerrymandered Map Despite 300K Signatures for Repeal Referendum*, MO. INDEPENDENT (Dec. 9, 2025), https://missouriindependent.com/2025/12/09/missouri-gerrymander-congressional-map-referendum; Jason Rosenbaum, *Missouri Redistricting Foes May Have Dealt Big Blow to Trump-Backed Congressional Map*, ST. LOUIS PUB. RADIO (Dec. 9, 2025), https://www.stlpr.org/government-politics-issues/2025-12-09/missouri-redistricting-foes-may-have-dealt-big-blow-to-trump-backed-congressional-map. After exchanging letters with PNP, the State filed a motion for sanctions, contending that PNP and Mr. Hatfield contradicted PNP's representations to the Court. Docs. 41-2, 41-3. The State also moved to alter or amend the judgment. Doc. 46. Both motions are fully briefed. Docs. 42–45, 47–49.

---

[1] At times, the Court has used "decertification" as a shorthand for "a certificate of insufficiency under MO. REV. STAT. § 116.150." While the parties had no apparent trouble understanding this term at the hearing, it has become an added source of contention. Doc. 41-1 at 10; Doc. 42 at 9. To avoid any doubt, the phrases should be treated as synonymous.

## LEGAL STANDARD

District courts have the inherent power to impose sanctions for bad-faith conduct, including abuse of the judicial process. *Schlafly v. Eagle F.*, 970 F.3d 924, 936–37 (8th Cir. 2020). But given "their very potency, inherent powers must be exercised with restraint and discretion." *Lupe Dev. Partners v. Penny Baird*, --- F.4th ---, 2026 WL 1252325 (8th Cir. 2026) (citation omitted). In extreme cases involving particularly egregious misconduct, a party's fraud on the court may justify vacating a judgment. *United States v. Smiley*, 553 F.3d 1137, 1142 (8th Cir. 2009). Regardless of the sanction, there must be "clear and convincing evidence" of misconduct, combined with a finding "that a lesser sanction would not sufficiently punish and deter the abusive conduct." *Martin v. DaimlerChrysler Corp.*, 251 F.3d 691, 694–95 (8th Cir. 2001).

An attorney practicing in this District must not knowingly make "a false statement of fact or law to a tribunal." MO. SUP. CT. R. 4-3.3(a); *see also* E.D. MO. L.R. 12.02 (adopting Missouri's Rules of Professional Conduct). There appears to be little authority limiting a lawyer's public statements after the conclusion of a case. However, attorneys generally must not issue "an extrajudicial statement that the lawyer knows or reasonably should know will be disseminated by means of public communication and will have a substantial likelihood of materially prejudicing an adjudicative proceeding," unless necessary to "protect a client from the substantial undue prejudicial effect of recent publicity" initiated by another party. *Id.* 4-3.6(a), (c).

Federal Rule of Civil Procedure 59(e) permits a court to alter or amend a judgment. Such motions "serve the limited function of correcting manifest errors of law or fact or to present newly discovered evidence." *United States v. Metro. St. Louis Sewer Dist.*, 440 F.3d 930, 933 (8th Cir. 2006) (quotation omitted). But they "cannot be used to introduce new evidence, tender new legal theories, or raise arguments which could have been offered or raised prior to entry of judgment." *Id.*

3

**DISCUSSION**

Invoking the Court's inherent authority, the State seeks sanctions for public statements PNP and its attorney made following the dismissal of this case. But while those comments pushed the envelope, the State has not presented clear-and-convincing evidence of bad faith to justify sanctions. Even if it had, a finding of misconduct would not change the Court's conclusion that the State still lacks standing to pursue its claims. *See* Doc. 39 at 7–8. Finally, the State's rehashing of abstention arguments fails to show a manifest error of law. Thus, the Court denies both of the State's motions.

## I.     Insufficient Evidence of Misrepresentation

While it was imprudent for PNP and its attorney to make public comments so closely related to its concessions in this case while related litigation is ongoing, the State is incorrect that the challenged statements "directly conflict[]" with counsels' representations at the hearing. Doc. 41-1 at 12. True, the Court's line of questioning presumed that the new map would go into effect unless and until the Secretary determined that the petition both contained "enough valid signatures" and otherwise complied with the Missouri Constitution.[2] Tr. at 45–52; *see also* Doc. 39 at 2 (collecting relevant Missouri authority). But PNP's counsel ceded ground only in the context of post-certification litigation. Tr. at 48, 52. In other words, the statements to the press violated the premise of the Court's questions but not the letter of the concessions that PNP actually made at the hearing. As such, there is not clear and convincing evidence that PNP's counsel breached their duty of candor to the Court.

---

[2] Indeed, the Cole County Circuit Court has since explained why PNP's "automatic suspension" arguments fall short. *Maggard v. Missouri*, No. 25AC-CC09120, Order and Final Judgement, at 11–17 (Mo. 19th Cir. Ct. Mar. 27, 2026). And despite the State's contention, *see* Doc. 44, the filing of this lawsuit by an apparently unrelated third-party is far from the "clear and convincing" evidence necessary to impose sanctions. Moreover, given that the *Maggard* Court rejected the challengers' position, it is difficult to identify any cognizable harm the State suffered as a result of that case.

Moreover, the State shares some blame for the creation of this ambiguity in the first place. Based on its assertion of irreparable harm, *see* Doc. 3-1 ¶ 14, the Court found it highly unlikely that the State would willingly expend the time and resources on signature verification when the Secretary could issue a certificate of insufficiency on constitutional grounds alone (particularly when so much of the constitutional analysis was developed through this lawsuit). *See* Doc. 39 at 3 n.2 ("[T]here is no apparent reason why he would incur the significant cost of signature verification given his stated belief that the petition is constitutionally deficient."). Apparently, the Secretary has reasons for taking a different approach.[3] But had the State indicated it might take that approach at the hearing, or even afterward, it likely would have forced PNP to address the scenario that occurred after dismissal.

That being said, the Court expects that this order will help PNP avoid any future foot faults. Lest there be any remaining doubt, the Court cautions PNP's counsel that any backtracking on their representations to this Court regarding the new map going into effect following a certification of insufficiency (unless and until a Missouri court overturns that decision) will result in the imposition of sanctions. At least on the current record, however, the State has failed to offer clear-and-convincing evidence that PNP has breached its duty of candor.

---

[3] As the Court previously recognized, the Secretary has the prerogative to decide how to conduct the certification process. Doc. 39 at 3 n.2. But that does not mean the State can have it both ways for purposes of litigation. For instance, in seeking injunctive relief, the State relied heavily on the cost of signature verification. *See, e.g.*, Doc. 3 at 11. Yet it now suggests that "skipping signature verification is not prudent" because PNP may not have enough signatures. Doc. 41-1 at 13 n.11; Doc. 43 at 12. Fair enough. But the State's election to complete signature verification before constitutional review has seriously eroded that cost as a basis for irreparable harm. Likewise, the State's invocation of "constitutional avoidance" rings hollow given that the express purpose of this case is to challenge the constitutionality of a referendum that may be resolved on a host state-law issues. *See* Doc. 43 at 12; Doc. 49 at 9.

## II.     Continued Lack of Standing

The State also invites the Court to revisit its holding on standing in light of PNP's "backtracking" and a purported misapprehension of Missouri law. Doc. 47 at 6–10. Both arguments fall short of justifying reconsideration.

The Court already has explained why the first point fails as a factual matter. Moreover, even if the PNP's public comments were sanctionable, the State is simply wrong about the legal significance of "spurious concessions." *Id.* at 8. While the Court did believe that PNP understood and agreed with its logical reasoning about when a challenged law is in effect during the referendum process, the Court made clear it would have reached the same conclusion on this matter of law regardless of PNP's position. *See, e.g.*, Doc. 39 at 7 n.4 ("In any event, the Court's review of Missouri law indicates that a contrary position would plainly fail."). And the Court's finding regarding ripeness is only bolstered by the *Maggard* Court's intervening rejection of the claim for "automatic suspension," *see supra* at 4 n.2, which undercuts the bulk of the State's remaining argument on this front. But even if that court had reached the opposite conclusion, nothing would prevent the Secretary from issuing a certificate of insufficiency, which PNP **has** agreed in no uncertain terms will prevent the new map from being displaced. *See, e.g.*, Doc. 48 at 7. Finally, as previously explained, the existence of parallel litigation like *Maggard*, or future litigation that may arise from the Secretary's certification decision does not confer standing. *See* Doc. 39 at 6 n.3.

Nor is the Court moved by the State's discussion of Missouri law. Although it was raised for the first time at the hearing, the Court already explained why the Missouri Court of Appeals decision in *Calzone v. Ashcroft* is distinguishable. Doc. 39 at 8. Likewise, the State's newfound reliance on *Missouri Electric Cooperatives v. Kander* is misplaced. Doc. 47 at 8–9 (discussing 497 S.W.3d 905 (Mo. Ct. App. 2016)). True, the Secretary's review at the certification stage is limited to "threshold issues that affect the integrity of the election itself, and that are so clear as to constitute a matter of form." *Kander*, 497 S.W.3d at 912. But *Kander* involved substantive

constitutional challenges to the text of the referendum petition itself. *Id.* at 907–10. Here, the claim stems from a threshold issue affecting the integrity of the election as a whole. And if the referendum is a clear violation of a bedrock constitutional principle, as the State suggests, it relates to a matter of form, not substance. As such, it would be suitable for resolution by the Secretary at the certification stage, making *Kander* inapposite. *See id.* at 912.

### III. *Pullman* Abstention

The State's effort to relitigate *Pullman* abstention likewise fails. The State largely resurrects arguments the Court already rejected. But a Rule 59(e) motion "cannot be used as a vehicle to relitigate old issues." *Ford v. Strange*, No. 1:24-CV-211-RWS, 2025 WL 2926194, at *3 (E.D. Mo. Oct. 15, 2025) (citation omitted). And the Court already has addressed the State's only "new" argument regarding the potential unavailability of relief in state court under *Kander*.[4] *See* Doc. 47 at 11–12. Moreover, since this Court's previous order, the list of parallel state court proceedings has only grown. The Missouri Supreme Court is set to decide whether the mere submission of the referendum petition displaced the new map. Regardless of the outcome there, the Secretary is in the process of conducting signature verification and still must complete his constitutional review, which will likely lead to a new round of litigation. As such, *Pullman* abstention remains a valid basis for dismissing this case.

### CONCLUSION

Accordingly, the Court **DENIES** the State's [41] Motion for Sanctions and [46] Motion to Alter Judgment.

So ordered this 11th day of May 2026.

ZACHARY M. BLUESTONE
UNITED STATES DISTRICT JUDGE

---

[4] While the Court elected to address the merits, it notes that a Rule 59(e) motion is not a proper vehicle to "raise arguments which could have been offered or raised prior to entry of judgment." *See Metro St. Louis Sewer Dist.*, 440 F.3d at 933.